[Crim. No. 3151. In Bank.—December 27, 1928.]

# THE PEOPLE, Respondent, v. CHARLES ESTORGA, Appellant.

H. E. Thompson and Geo. F. Lord for Appellant.

U. S. Webb, Attorney-General, James S. Howie, Deputy Attorney-General, and George H. Johnson for Respondent.

WASTE, C. J.—The defendant was convicted on three counts of an information charging the crime of rape. The sufficiency of the evidence to sustain the verdict is not questioned. In fact, it could not be, for, as defendant in the court below, appellant voluntarily took the stand and admitted, without equivocation, the commission of each of the acts charged. The only point we deem it necessary to consider on this appeal is the contention that the court committed prejudicial error in its method of conducting the examination of the jurors called to try the cause, the question for consideration being whether or not the court refused to allow counsel for the defense to make a reasonable examination of the prospective jurors for purposes related to the right of challenge for cause.

At the outset, this court must register its strong disapproval of the method followed by the trial court in selecting the jury in this case. From the record it appears that, when the case was answered ready for trial, the clerk called the roll of the jurors constituting the panel, apparently for the purpose of ascertaining who were present. Without any names being taken from the box containing the list of jurors, and before any jurors were called to take their places in the jury-box, the court propounded to the jurors present, collectively, a large number of questions which he termed "the usual questions touching your qualifications to act as jurors in this case." Before doing so, he stated who the parties were, and explained the nature of the charges as set out in the several counts of the information. The record is silent as to any answers returned by the jurors. Many of the questions, which extend through several pages of the transcript, appear to have been of such nature as to call for a negative reply, and it may be assumed that the silence of the jurors under the questions was equivalent, in the majority of cases, to a negative answer. With the exception of a counter-interrogatory addressed to the court by one of the jurors, who sought information as to her status on the jury because she was a member of the county probation committee, but one response was made by any juror. Some of the questions asked by the court dealt with possible

knowledge by the jurors of the alleged offense, and the relationship, if any, of the parties. By other questions, the court sought to ascertain the attitude of the jurors toward the particular offense with which the defendant was charged, and whether, if the jurors were facing a similar charge, they would be willing to be tried by jurors who had the same attitude toward the charge and the defendant as they had at the present time. By other questions, the court sought to ascertain if the jurors would give the defendant the benefit of the presumption of innocence, and whether or not they would accept the instructions of the court as to the law in the case, the interrogatories concluding with several questions as to whether or not the jurors would give a fair, impartial and unbiased consideration to the case.

After such examination by the court, the names of twelve jurors were drawn, the court announced that, in the opinion of the court, the examination for cause was sufficient, and directed counsel to exercise their peremptory challenges. The People passed the challenge. Thereupon the following took place:

"Mr. H. E. Thompson [counsel for the defense]: If the Court please in the answers the veniremen made I was not able to find out how they answered. I was not able to see a nod of the head. There was a large number here standing up. I am not able from the examination to intelligently challenge on behalf of this defendant, and I would like to have the privilege of asking each individual juror a few questions.

"The Court: What questions would you like to ask?

"Mr. Thompson: I would like to know if they are married men, and if they have children, and whether they are young men or young women, and if they would have any prejudice by reason of those facts, and whether they have had any trouble of the kind in their family or their near families or near relations, and I don't know, any questions—all being examined in a body, I don't know how any of them answered any questions, and I would not know without I individually asked them separately how each one feels.

"The Court: None of the questions you have suggested would tend to develop a ground for challenge for cause, and therefore would be immaterial."

The defendant thereupon excepted to the ruling, and peremptorily challenged two of the jurors, but declined to make any further challenges, counsel stating that he "was not sufficiently informed." On being directed to either exercise further challenges or pass the jury, the defense passed, and the jury was sworn to try the cause. Appellant contends that by reason of the method followed by the trial court in selecting the jury, and the trial court's limitation of examination by his counsel, he was denied the right to test by reasonable inquiry the qualifications of the prospective jurors.

This court cannot approve the manner of selecting the jury in this case. While the legislature, at its most recent session, provided, in section 1078 of the Penal Code, that "It shall be the duty of the trial court to examine the prospective jurors to select a fair and impartial jury," it further provided, in the same section, that the court "shall permit reasonable examination of prospective jurors by counsel for the people and for the defendant." (Stats. 1927, p. 1039.) We have noted a tendency on the part of trial judges throughout the state to place too literal an interpretation upon what is the "duty of the trial court to examine prospective jurors," and to pay too little attention to the right of a "reasonable examination of prospective jurors by counsel" for the People and, particularly, counsel for the defendant. The section is one of those passed by the legislature on the recommendation of the commission for the reform of criminal procedure created by the legislature in 1925, the purpose of the enactment, of course, being to expedite the trial of criminal causes, and to correct the abuse which has grown up in this jurisdiction, through tedious and unnecessary examination of prospective jurors in criminal cases. It has become a matter of common knowledge in this state that the efforts on the part of counsel for defendants in criminal cases have developed into attempts to disqualify jurors, rather than to seek to ascertain their qualifications. The purpose of the statute, however, was not to bring about expedition by depriving either the People, or defendants charged with the commission of offenses, of the right of a reasonable examination of prospective jurors, and the legislature was particular to provide for that right. The collective examination of the entire panel in the body

of the courtroom, and by a series of questions which may, for the greater part, be answered by silence on the part of the jurors, and under circumstances like those in the case at bar, in which neither the People nor the defense had any opportunity to observe the jurors as they answered, is, in our opinion, such a wide departure from the due course and conduct of an examination as to call for the unqualified disapproval of this court. (See, also, *People* v. *Edenburg,* 88 Cal. App. 558 [263 Pac. 857]; *People* v. *Riordan,* 79 Cal. App. 488, 496 [250 Pac. 190].) In those cases the jurors who were examined collectively by the court appear to have been those who had been drawn and seated in the jury-box in the customary manner, were thus reduced to twelve in number, and had thereby become more definitely prospective jurors for the case on trial. This court, however, is not prepared to criticise a collective examination by the trial court of jurors drawn and seated in the jury-box, provided the examination be of such nature, and conducted in such manner, as to sufficiently disclose the state of mind and attitude of the jurors toward the cause and the parties involved, and that opportunity for a "reasonable examination" of the prospective jurors be accorded the People and the defense, on it being made to appear to the satisfaction of the court that such further examination is both "reasonable" and proper. We commend to the trial courts, however, a consideration of some of the observations made by the district courts of appeal on this subject.

▇ A first impression of the situation presented in this case would seem to require a reversal of the judgment of conviction upon the ground that the defendant had not been accorded an opportunity to select a fair and impartial jury. But where, as in this case, the jury has found the defendant guilty, we must, upon a review of the entire record, decide whether, in our judgment, any error committed has led to the verdict which was reached. If it appears to our satisfaction that the result was just, and that it would have been reached if the error had not been committed, a reversal or a new trial is not to be ordered. (*People* v. *O'Bryan,* 165 Cal. 55, 66 [130 Pac. 1042].) While the constitution of this state guarantees to one accused of crime all the rights and safeguards incident to a trial by jury, including the right to the selection of a fair and impartial jury, it also provides

that no judgment shall be set aside, or a new trial granted, in any case for any error of procedure in the trial court, unless, after an examination of the entire cause, including the evidence, the appellate tribunal shall be of the opinion that the error complained of has resulted in a miscarriage of justice. (Const., art. VI, sec. 4½.) In his "qualified concurrence" in the case of *People* v. *Fleming,* 166 Cal. 357, 384, 385 [Ann. Cas. 1915B, 881, 136 Pac. 291, 303], Mr. Chief Justice Beatty expressed the view that the term "miscarriage of justice," as used in the section of the constitution, *supra,* may be said to mean "the conviction of a person who is probably innocent." It may therefore be accepted as the rule that, since the adoption of the amendment to the constitution, *supra,* the mere fact of the assignment of error is not conclusive. "The final test is the opinion of the appellate court upon the result of the error. No doubt this view requires the court, to some extent, to weigh the evidence, and form conclusions upon its weight—a function which, heretofore [before the amendment to the Constitution], has been reserved for the jury. But it cannot be doubted that the legislators, in proposing the amendment, and the electors, in adopting it, intended to put upon the courts the performance of just that function. We are not substituted for the jury. We are not to determine, as an original inquiry, the question of the defendant's guilt or innocence. But, where the jury has found him guilty, we must, upon a review of the entire record, decide whether, in our judgment, any error committed has led to the verdict which was reached." (*People* v. *O'Bryan, supra.*)

It therefore follows that, where prejudicial error is predicated on any of the grounds specified in the constitution, it is incumbent upon this court to determine the matter on the particular facts and circumstances appearing in the individual case in which the assignment of error is made. Applying that rule to the present case, there appear to be two sufficient reasons why the procedure followed by the trial court in the selection of the jury, improper though it was, should not result in a reversal. The first of these reasons is that it would seem that the desire of the defense to further question the prospective jurors, after they were called to the box, as indicated by the questions which counsel

stated it was desired to ask, was not so much for the purpose of laying the basis of challenges for cause as to pave the way for possible peremptory challenges, and there is no statutory authority for the examination of jurors solely for that purpose. (*People* v. *Edwards,* 163 Cal. 752, 754 [127 Pac. 58].) Furthermore, the defense did not exhaust its peremptory challenges, excusing only two jurors when accorded that opportunity. The defense has made no affirmative showing, and does not offer to show, that any of the twelve jurors who were actually sworn and served in the trial of the cause were biased, prejudiced, or in any way unfit to serve as trial jurors; nor does it appear that by reason of the manner in which the jury was selected the defendant did not have a fair and impartial trial.

The other, and to our minds the more potent, reason for holding that the judgment should not be reversed is found in the fact that, although the defendant on arraignment entered a plea of not guilty to the charges of the information, he voluntarily took the stand at the trial, as a witness in his own behalf, and, without equivocation or qualification, admitted the commission of the acts charged. It appears from his own testimony that he met the prosecutrix—a girl of the age of thirteen or fourteen years—while the two were working in the orchards in Northern California. After a week of persuasion, and under a promise that the defendant would take the girl to Arkansas and marry her, the prosecutrix consented to the acts. In the meantime, they had traveled together from Sacramento in the defendant's automobile, spending their nights together, as far as San Bernardino County, where the acts specified in the information were committed. The defendant knew that the girl was under the age of eighteen years. He, therefore, caused her to say that she was seventeen years old, and his wife. On such a record, from which it appears from the testimony of the defendant that he has been notoriously guilty of some serious offense, it cannot be said that a miscarriage of justice has occurred by reason of the conviction.

While, as already indicated, we must strongly disapprove of the method by which the jury was selected in this case, we cannot bring ourselves to reverse the righteous judgment of conviction which followed.

The order overruling defendant's motion for a new trial and the judgment and sentence of the court are, and each is, affirmed.

Richards, J., Seawell, J., Curtis, J., Langdon, J., and Shenk, J., concurred.

PRESTON, J., Dissenting.—I dissent. I think the prejudice to the rights of the defendant requires a reversal of the judgment.