[Civ. No. 29915.   Second Dist., Div. Two.   Dec. 13, 1967.]

WOODROW ROUSSEAU, Plaintiff and Appellant, v. WEST COAST HOUSE MOVERS, Defendant and Respondent.

Rainer & Moriarity and Robert J. Jagiello for Plaintiff and Appellant.

Hagenbaugh, Murphy & Medearis, Van A. Hagenbaugh and Ronald L. Katsky for Defendant and Respondent.

FLEMING, J.—Suit for personal injuries by Rousseau, an employee of the Board of Education, and by the State Compensation Insurance Fund as intervenor, against West Coast House Movers. From a jury verdict in favor of defendant, Rousseau appeals.

## Voir Dire

Rousseau claims prejudicial error in the selection of the jury because the court itself conducted the interrogation of prospective jurors on their *voir dire* examination. He contends the court should have tendered counsel the opportunity to conduct an interrogation of prospective jurors, and in support of his argument he cites rule 228 of California Rules of Court: "In civil jury trials, it shall be the duty of the trial judge to examine the prospective jurors to select a fair and impartial jury. He shall permit reasonable examination of prospective jurors by counsel for each party."

Neither specifically nor generally do we find prejudicial error in the selection of the jury.

The following procedure was used by the trial court in selecting the jury. The trial judge advised counsel in chambers that he would conduct the examination of prospective jurors, and that counsel should submit questions to the court before and during the examination for use in the interrogation of prospective jurors. After the jury panel was sworn and 12 prospective jurors were seated in the jury box, the trial judge told the remaining members of the panel to pay close attention to the questions asked of the jurors in the box since if called to the jury box they would be asked whether

they had heard the previous questions and whether their answers would differ from those given by their predecessors. The trial judge then advised the panel of the general nature of the cause to be tried, and proceeded to question the prospective jurors in the box. The questions covered prior knowledge of or contact with the parties or their attorneys; knowledge of the facts of the case; the reality of pain and suffering; experience in adjustment of claims; racial, ethnic, and religious prejudice; prior injuries; current litigation; ability to apply the law as given by the court; occupations of the jurors and their spouses; prior jury service; and other subjects relating to the prospective jurors' ability to try the case fairly and impartially. From time to time particular questions were asked of prospective jurors at the instance of counsel. Rousseau's counsel did not object to any of the questions. Nor is there any record of specific questions Rousseau sought to have propounded to the jury panel or to individual jurors which were refused by the court. As peremptory challenges were exercised, new jurors in the box were asked if they had heard the previous questions and if their answers to the questions would be the same as those previously given. At the conclusion of the examination both sides announced their acceptance of the jury as constituted, and the jury was sworn.

Specifically, there is nothing in the record to show that counsel for plaintiff took exception at the time of the jury's selection to the manner in which the jury examination was conducted. To the contrary, counsel announced at the time the trial jury was sworn that plaintiff accepted the jury as constituted. Only after an unfavorable verdict did plaintiff register a complaint against the conduct of the jury examination, a complaint which obviously then came too late. Rousseau's failure to except at the proper time to the conduct of the examination and his inability to specify particular questions which he sought to have asked and which were refused, preclude a subsequent attack on the procedure followed in the trial court, since the claimed errors would have been readily curable if a timely objection had been taken. (*People* v. *Ah Lee Doon,* 97 Cal. 171, 176 [31 P. 933] ; *People* v. *Sanford,* 43 Cal. 29, 31-32.)

Yet because Rousseau has vigorously challenged the method used by the trial court in conducting the examination of prospective jurors, we do not rest our decision solely on his failure to except to the procedure and his failure to request particular interrogatories for prospective jurors, but take up the

general question of appropriate procedures in the selection of a jury. It appears to be plaintiff's contention that he had an absolute right to conduct a direct interrogation of prospective jurors during the impanelment of a jury. In evaluating this contention we examine the origins of rule 228, and, in view of the rule's derivation from the criminal law and the paucity of decisions in civil cases on the conduct of jury examination, we turn to precedents in the criminal field.

California Rules of Court, rule 228 for civil jury trials in superior courts and rule 516 for trials in municipal courts, follow the text of Penal Code, section 1078, adopted in 1927, which reads: "It shall be the duty of the trial court to examine the prospective jurors to select a fair and impartial jury. He shall permit reasonable examination of prospective jurors by counsel for the people and for the defendant.'' How is the duty of the trial court to select a fair and impartial jury to be carried out? What examination of prospective jurors is to be made for what purposes? Who may be entrusted with the actual conduct of the examination? Does examination of prospective jurors by counsel require direct interrogation by counsel or may the presentation of counsel's questions through the medium of the court suffice?

We start our discussion with some consideration of the basic purpose to be served by interrogation of prospective jurors. At common law, and in England today, such interrogation of prospective jurors is unknown. (*Voir Dire Examination of Jurors, the English Practice,* 16 Georgetown L.J. 438, 442-445.) ▮▮▮ But California has long permitted examination of prospective jurors in order to determine whether a basis for challenge for cause exists. Such examination is not for the purpose of determining the exercise of peremptory challenges (*People* v. *Edwards,* 163 Cal. 752, 754-755 [127 P. 58] ; *People* v. *Ferlin,* 203 Cal. 587, 598 [265 P. 230] ; *People* v. *Rigney,* 55 Cal.2d 236, 244 [10 Cal.Rptr. 625, 359 P.2d 23, 98 A.L.R.2d 186] ; *People* v. *Deriso,* 222 Cal.App.2d 478, 486-487 [35 Cal.Rptr. 134]), although occasional dictum has loosely supported such a purpose (*People* v. *Boorman,* 142 Cal.App.2d 85, 91 [297 P.2d 741]). Neither is it a function of the examination of prospective jurors to educate the jury panel to the particular facts of the case, to compel the jurors to commit themselves to vote a particular way, to prejudice the jury for or against a particular party, to argue the case, to indoctrinate the jury, or to instruct the jury in matters of law. Such activities are taken care of by other phases of the

trial, such as opening statements of counsel, presentation of proof, final arguments of counsel, and instruction in the law by the court. (See *People* v. *Love,* 53 Cal.2d 843 [3 Cal.Rptr. 665, 350 P.2d 705] (disapproving questions about prospective jurors' knowledge of the law); *People* v. *Mitchell,* 61 Cal.2d 353, 366 [38 Cal.Rptr. 726, 392 P.2d 526] (disapproving argumentative questions to the jury panel).)

We next consider the mechanics of the conduct of the examination of prospective jurors. Neither Penal Code, section 1078, nor the California Rules of Court specify the manner in which the examination of prospective jurors by court and counsel shall be conducted or the procedures to be used in selecting a fair and impartial jury. Historically, examination may be oral or written, direct or indirect. For example, under the original equity and admiralty procedures all examination of witnesses was conducted in writing. (Wigmore on Evidence, § 799). Our own discovery rules recognize two classes of depositions, those taken by oral examination, and those taken by written interrogatories. (Code Civ. Proc., § 2016.) Unlike Federal Rules of Civil Procedure, rule 47, and Federal Rules of Criminal Procedure, rule 24, both of which refer to the "conduct of the examination" of prospective jurors, our rules are silent on the subject of the conduct of the examination and merely refer to "examination" of prospective jurors without specifying any particular mode of examination.

As a consequence of this lack of specification considerable flexibility in the manner of jury selection is possible under California procedure. (*People* v. *Brown,* 207 Cal. 172, 179 [277 P. 320]; *West Coast Securities Co.* v. *Kilbourn,* 110 Cal. App. 293, 297 [294 P. 57].) Clearly, the responsibility for securing a fair and impartial jury has been placed on the trial judge, who is charged with the duty to examine prospective jurors. He must also permit reasonable examination of prospective jurors by counsel. The grand objective of the examination is to elicit information from prospective jurors which will permit the exercise of challenges for cause in order to arrive at a fair and impartial jury. But the specific methods to achieve this objective have not been prescribed, and several different procedures are feasible. These include:

1. The court may turn all interrogation over to counsel and delegate to counsel the conduct of its examination of prospective jurors.

2. The court may conduct an initial examination of pros-

pective jurors and then permit counsel to conduct a general examination of prospective jurors.

3. The court may conduct an initial examination of pros-. pective jurors and then permit counsel to conduct an examination of prospective jurors on specific subjects only.

4. The court may itself conduct the examination of prospective jurors and require the examination of prospective jurors by counsel to be conducted by interrogation through the court.

5. The court may itself conduct the examination of prospective jurors and require examination by counsel to be conducted by interrogation through the court, but when positive answers on a particular subject develop, permit counsel to conduct an examination on that subject by direct oral interrogation.

No single one or combination of these methods is necessarily called for at the expense of the others, and each may have its own particular place and use. Whichever method is used must, of course, achieve the basic goal of a fair and impartial jury and must include reasonable examination by counsel, either by direct oral interrogation or by interrogation through the court, on subjects appropriate to the exercise of challenges for cause.

The conduct of the jury examination by the trial court has been specifically approved in *People* v. *Brown,* (1929) 207 Cal. 172 [277 P. 230]. In upholding this procedure the Supreme Court said, ''Appellants next contend that the trial court unduly restricted the examination of jurors upon their *voir dire.* Scarcely any specific instances are pointed to, but we are enjoined to read the whole transcript upon this subject in order to discern the attitude of the court in this respect. The court himself conducted the examinations, permitting the attorneys to suggest questions, as well as also permitting some of the individual defendants to do so. When a challenge was interposed and denied, the examination of the talesman was taken over by the attorney making the challenge. We have examined the entire transcript of these proceedings, which covers some four hundred pages, and in our opinion the examination of each talesman was full, fair, just and proper, and no substantial right of any kind was denied defendants or any of them. *This method of examining jurors has been provided for by the recent statute,* section 1078 of the Penal Code (as amended by Stats. 1927 p. 1039), *and where fairly con-*

*ducted has been approved by this court.* (*People* v. *Estorga,* 206 Cal. 81 [273 P. 575].)'' (Italics added.)

Since *People* v. *Brown* was a criminal case, *a fortiori* the practice there followed is available for use in civil cases. In determining which method of jury examination is most appropriate for use in a particular cause the trial court must consider and balance a variety of interests. These include, the interest of the parties in trying their case before a fair and impartial jury, the interest of the parties in avoiding the unreasonable expense of a protracted jury examination conducted by their adversaries, the interest of jurors in conserving their time and energies, the interest of jurors in avoiding unwarranted intrusion into their personal affairs (e.g. *People* v. *Daily,* 157 Cal.App.2d 649 [321 P.2d 469]), the interest of the general public in encouraging its citizens to serve as jurors, the interest of the general public in avoiding the expense of wasted court time, the interest of other litigants in the availability of court facilities, the interest of counsel in conducting litigation and earning fees with a minimum of unproductive time, and the interest of the trial court in effective and productive dispatch of its business. The abuses which have arisen from the failure of trial judges to take appropriate steps to balance these various interests in jury examination have been well summarized by Mr. Justice Draper in *Sweet* v. *Stutch,* 240 Cal.App.2d 891, 894 [50 Cal. Rptr. 9] : ''We do, however, note the waste of valuable court time involved in such excursions. *Voir dire* of the jury is not the time for premature presentation of evidence, nor for the even more frequent attempts at preinstruction. Neither instruction nor the giving of evidence is the function of counsel. The immediate advantage of such diversions is questionable, since opposing counsel usually can equal or exceed the initial distractions from the true purpose of jury trial. The larger interest of the trial bar as a whole, and of equally earnest litigants who await a forum for their own trials, is frustrated by such dissipation of court time. We cannot expect the Legislature to provide, or the people to pay for, additional courts to provide the leisure for overlong *voir dire* exercises. A full court day was required to choose a jury here. Unfortunately, the expenditure of so much time is not uncommon, although an hour frequently would suffice. The purpose of the *voir dire* is but to insure choice of 12 jurors who are fair and who have no preconceived notions of the facts or the parties. Each trial judge has a broad power, on

his own motion, to curb such examination. It is to be hoped that judges can develop a uniform approach to keep *voir dire* within reasonable limits, to the ultimate benefit of lawyers, litigants, and jurors alike.''

To these comments we add the observation that with the growing frequency of multiple-party litigation, unrestricted *voir dire* by counsel often trespasses on eternity.

We conclude that in achieving the objective of a fair and impartial jury, various procedures, including that used by the trial court in this case, are permissible when intelligently and conscientiously applied. No substantial rights of the parties were denied by reason of the procedure of jury selection followed in this cause. (*People* v. *Brown,* 207 Cal. 172, 178 [277 P. 320]; *People* v. *Casserio,* 16 Cal.App.2d 223, 227 [60 P.2d 505]; *West Coast Securities* v. *Kilbourn,* 110 Cal.App. 293, 298 [294 P. 57].)

*Admissibility of Evidence of Arrests for Drunkenness*

■ Plaintiff claimed by way of damages that he had suffered head injuries in the accident which changed him from a sober, reliable worker before the accident into a victim of traumatic epilepsy after the accident, whose irrational conduct was the proximate result of his injuries. Plaintiff, his wife, and his witnesses all denied any past or present history of drunkenness.

On this issue defendant introduced records of plaintiff's arrests for drunkenness before and after the accident. Some 20 of these were in the following form: "January 15, '63, Adams and Harcourt, Officers Wade and Barker. Observed defendant drunk on sidewalk, manager of business complained. Defendant unable to stand by himself. Admits drinking, yes; what, beer; question when, today; question where, all over. Breath, alcoholic; coordination, poor; eyes, bloodshot; watery. Face flushed, gait staggering; speech, thick, stuporous. Complained of illness or injury, no.

"August 6, '63, Officer Kasperson and Officer Babelonia, observed defendant down in alley at rear of above location, which was 4876 West Adams, drunk in public view, drunk and unable to care for self and property. Defendant had cut over right eye received from fall. Admits drinking, yes; what, whiskey; when, today; where, home; breath, alcoholic; coordination, poor; eyes, bloodshot; face, flushed; speech, thick, stuporous.''

These records were relevant and admissible on two issues

—first, to refute plaintiff's claim that his difficulties were of recent origin and had been caused by an accident which had brought about a change in personality and mode of life; and second, to rebut plaintiff's claim that his motor difficulties subsequent to the accident resulted from traumatic epilepsy, and to prove, instead, that they resulted from excessive use of alcohol. ▮ These reports reflected the direct observations of the arresting officers and hence were admissible as business records under the Uniform Business Records as Evidence Act, which makes admissible the observations of an informant, having the business duty to observe and report, which are made in the regular course of business at or near the time of the event, from sources of information which are considered trustworthy. (*Taylor* v. *Centennial Bowl, Inc.*, 65 Cal.2d 114, 126 [52 Cal.Rptr. 561, 416 P.2d 793] ; former Code Civ. Proc., § 1953f now Evid. Code, § 1271.)

*Evidence of Convictions for Drunk Driving and Resulting Inference of Revocation of Driver's License.*

▮ Defendant introduced in evidence records of three convictions of plaintiff for misdemeanor drunk driving and thereafter sought and obtained an instruction that the Department of Motor Vehicles was required to revoke the license of a driver who had three convictions for drunk driving within a 10-year period. Defendant also referred to this matter on final argument. Plaintiff objected to this evidence as hearsay. (*Marccau* v. *Travelers Ins. Co.*, 101 Cal. 338, 344 [35 P. 856, 36 P. 813] ; *Board of Education* v. *King*, 82 Cal. App.2d 857 [187 P.2d 427].)

Defendant seeks to justify the admission of this evidence as rebuttal of plaintiff's claim that he no longer drove an automobile because of the injuries incurred in the accident, and as impeachment of plaintiff's testimony about disabilities which resulted from the accident. It is entirely possible that in certain circumstances defendant's theory might justify the admission of such evidence. But the difficulty with its position is that the defendant itself on cross-examination of the plaintiff and his witnesses injected into the case the question of ability to drive a motor vehicle, a subject which had not previously been an issue in the case. Thus the convictions for drunk driving related entirely to a matter introduced into the case by the defendant itself. As plaintiff cogently argues, to admit this evidence on the ground that it impeached plaintiff's testimony on cross-examination would open the door to the admission of all prior and subsequent convictions in any

hearing in which a party testified. The witness would face a dilemma. If opposing counsel were allowed to pose the question, ''Were you convicted of wife beating?'' the witness would have to answer yes or no, and either answer would allow the prohibited evidence to come in. A *yes* answer would admit the conviction, while a *no* answer would provide a foundation for the introduction of the conviction to impeach the witness. We find no justification for the introduction of this evidence for impeachment purposes.

The evidence remained subject to the general prohibition against hearsay, unless it fell within one of the recognized exceptions to the hearsay rule. But since we have already approved the admission in evidence of the arrest reports for drunkenness, should we not likewise sanction the admission of a judgment of conviction for misdemeanor drunk driving as competent evidence of a fact inherent in the conviction itself —i.e. drunkenness? It can be argued with considerable force that a judgment of conviction for drunk driving amounts to better proof of the fact of drunkenness than the arrest reports which we have declared admissible. But although it may appear somewhat illogical to admit as an exception to the hearsay rule the observations of a witness under the Uniform Business Records as Evidence Act, which observations may have been mistaken, or contradicted, or not accepted as persuasive, and at the same time to reject a judgment of conviction which reflects a solemn judicial evaluation of all evidence presented on the particular subject, the hearsay exception is so limited, and, in instances of violations of the Vehicle Code, the general rule persists. Section 40834 of the Vehicle Code declares that a conviction for a violation of the code shall not be res judicata or constitute a collateral estoppel of any issue determined therein in any subsequent civil action. The later section 1300 of the Evidence Code, while relaxing the rule in the instance of felony convictions, continues the prohibition against the admission of a misdemeanor conviction to prove a fact inherent in the judgment of conviction. Thus the general prohibition against hearsay applies to the misdemeanor convictions for drunk driving, and it was erroneous to admit the convictions in evidence and to instruct the jury that the revocation of plaintiff's driver's license could be inferred from his three convictions for drunk driving.

However, in view of the overwhelming mass of competent evidence on the subject of plaintiff's drunkenness, the improperly admitted evidence was no more than cumulative

and repetitious. We find the error harmless within the meaning of article VI, section 13, of the California Constitution. (*Alarid* v. *Vanier*, 50 Cal.2d 617, 625 [327 P.2d 897] ; *Fuentes* v. *Tucker*, 31 Cal.2d 1, 9 [187 P.2d 752].)

Plaintiff's other arguments require no discussion.

The judgment is affirmed.

Roth, P. J., concurred.

Herndon, J. did not participate.

Appellant's petition for a hearing by the Supreme Court was denied February 8, 1968. Mosk, J., was of the opinion that the petition should be granted.