[No. H007750. Sixth Dist. Apr. 9, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
ALAN MARK BOULERICE, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts 4 and 5.

## COUNSEL

Dallas Sacher, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Ronald E. Niver and Bruce Ortega, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PREMO, J.**—After receiving a prison term for his second felony indecent exposure conviction, Alan Mark Boulerice appeals, contending that the jury

selection provisions of Proposition 115 which prohibit the parties from questioning prospective jurors violate the equal protection clauses of the federal and state Constitutions. He also complains that the trial court erred in allowing inadmissible character evidence, and that the prosecutor engaged in prejudicial misconduct during closing argument. We disagree and affirm.

## 1. FACTS

On March 20, 1990, over the course of the afternoon, 21-year-old Brooklyn Stover, an employee at Shopper's Corner Market in Santa Cruz, had been in and out of the parking lot retrieving shopping carts. She saw a car parked in the lot for about an hour. At one point, appellant was sitting in the driver's seat. When she passed near it about 3:45 p.m., however, appellant was sitting in the backseat with no pants on. His penis was erect and he was "[k]ind of playing with it." Annoyed and bothered, she called the police. Officer Jim Connor arrived 10 minutes later, approached the car and saw appellant, who was wearing a white T-shirt and shorts, sitting on the left side of the backseat near the only open window, masturbating. When Connor and appellant "made eye contact, [appellant] immediately put his penis back in his shorts and attempted to cover himself."

Appellant was charged with indecent exposure (Pen. Code, § 314, subd. 1), a felony, based on the allegation that he had been convicted of indecent exposure twice as misdemeanors and once as a felony. The information further alleged that appellant had previously served a prior prison term (Pen. Code, § 667.5, subd. (b)), and charged a violation of probation in Santa Cruz County Superior Court No. CR-1945.

Appellant was convicted of the charge at jury trial. He waived jury trial on the prior convictions, and the court found one of the allegations true. The others were dismissed. The court found a violation of probation in CR-1945.

Appellant was sentenced to three years in state prison: the midterm of two years on the charge, one year consecutive for the prior conviction, and two years concurrent for the violation of probation. This appeal ensued.

## 2. CONTENTIONS ON APPEAL

Appellant contends first, that the provision of Proposition 115 which prohibits defendants in criminal cases from asking questions of prospective

jurors to aid them in the exercise of their peremptory challenges violates the equal protection clauses of the state and federal Constitutions. Second, he contends the trial court erred in allowing introduction of inadmissible character evidence. Finally, he asserts that the prosecutor engaged in prejudicial misconduct during closing argument by referring to appellant's failure to testify, and by seeking to inflame the passion and prejudice of the jury.[1]

### 3. JURY SELECTION PROCEDURES

 Appellant complains that the jury selection procedures of Proposition 115 violate the equal protection clauses of the United States and California Constitutions by allowing litigants in civil cases greater latitude in questioning potential jurors than litigants in criminal cases.

Section 6 of Proposition 115 repealed former section 223 of the Code of Civil Procedure.[2] As it stands now, section 223 requires the court to examine the prospective jurors, allows the court to permit supplemental examination by the parties or by itself at the behest of the parties on a showing of good cause, and forbids examination of prospective jurors in aid of the exercise of peremptory challenges.[3]

Jury selection by civil litigants is now governed by section 222.5.[4] That section gives counsel for each party the right to examine prospective jurors

---

[1]Appellant's fourth and fifth contentions on appeal were previously decided in his favor by this court on a petition for a writ of habeas corpus in case number H008700, filed September 24, 1991.

[2]Further statutory references are to the Code of Civil Procedure unless otherwise stated.

[3]Section 223 now provides: "In a criminal case, the court shall conduct the examination of prospective jurors. However, the court may permit the parties, upon a showing of good cause, to supplement the examination by such further inquiry as it deems proper, or shall itself submit to the prospective jurors upon such a showing, such additional questions by the parties as it deems proper. Voir dire of any prospective jurors shall, where practicable, occur in the presence of the other jurors in all criminal cases, including death penalty cases. [¶] Examination of prospective jurors shall be conducted only in aid of the exercise of challenges for cause. [¶] The trial court's exercise of its discretion in the manner in which voir dire is conducted shall not cause any conviction to be reversed unless the exercise of that discretion has resulted in a miscarriage of justice, as specified in Section 13 of Article VI of the California Constitution."

[4]Section 222.5, enacted in September 1990, provides: "To select a fair and impartial jury in civil jury trials, the judge shall examine the prospective jurors. Upon completion of the judge's initial examination, counsel for each party shall have the right to examine, by oral and direct questioning, any of the prospective jurors in order to enable counsel to intelligently exercise both peremptory challenges and challenges for cause. During any examination conducted by counsel for the parties, the trial judge should permit liberal and probing examination calculated to discover bias or prejudice with regard to the circumstances of the

"to enable [them] to intelligently exercise both peremptory challenges and challenges for cause."[5]

---

particular case. The fact that a topic has been included in the judge's examination should not preclude additional nonrepetitive or nonduplicative questioning in the same area by counsel.

"The scope of the examination conducted by counsel shall be within reasonable limits prescribed by the trial judge in the trial judge's sound discretion. In exercising his or her sound discretion as to the form and subject matter of voir dire questions, the judge should consider, among other criteria, any unique or complex elements, legal or factual, in the case and the individual responses or conduct of jurors which may evince attitudes inconsistent with suitability to serve as a fair and impartial juror in the particular case. Specific unreasonable or arbitrary time limits shall not be imposed.

"The trial judge should permit counsel to conduct voir dire examination without requiring prior submission of the questions unless a particular counsel engages in improper questioning. For purposes of this section, an 'improper question' is any question which, as its dominant purpose, attempts to precondition the prospective jurors to a particular result, indoctrinate the jury, or question the prospective jurors concerning the pleadings or the applicable law. A court should not arbitrarily or unreasonably refuse to submit reasonable written questionnaires, the contents of which are determined by the court in its sound discretion, when requested by counsel. . . ."

[5]California has detailed provisions for challenges. There are three grounds for a challenge for cause: general disqualification, which disqualifies the juror from serving in the action on trial; implied bias, as, when the existence of the facts as ascertained, in judgment of law disqualifies the juror; or actual bias, when a state of mind exists on the part of the juror in reference to the case, or to any of the parties, which will prevent the juror from acting with entire impartiality, and without prejudice to the substantial rights of any party. (§ 225, subds. (b)(1)(A), (b)(1)(B), and (b)(1)(C).)

"General disqualification" is defined as: "A want of any of the qualifications prescribed by [the Code of Civil Procedure] to render a person competent as a juror[,]" and "[a] loss of hearing, or the existence of any other incapacity . . . [which renders a person] incapable of performing the duties of a juror . . . without prejudice to the substantial rights of the challenging party." (§ 228.)

"A challenge for implied bias may be taken for one or more of the following causes . . . : [¶] (a) Consanguinity or affinity within the fourth degree to any party, to an officer of a corporation which is a party, or to any alleged witness or victim in the case at bar.

"(b) Standing in the relation of, or being the parent, spouse, or child of one who stands in the relation of, guardian and ward, conservator and conservatee, master and servant, employer and clerk, landlord and tenant, principal and agent, or debtor and creditor, to either party or to an officer of a corporation which is a party; or being a member of the family of either party; or a partner in business with either party; or surety on any bond or obligation for either party, or being the holder of bonds or shares of capital stock of a corporation which is a party; or having stood within one year previous to the filing of the complaint in the action in the relation of attorney and client with either party or with the attorney for either party. A depositor of a bank or a holder of a savings account in a savings and loan association shall not be deemed a creditor of that bank or savings and loan association for the purpose of this paragraph solely by reason of his or her being a depositor or account holder.

"(c) Having served as a trial or grand juror or on a jury of inquest in a civil or criminal action or been a witness on a previous or pending trial between the same parties, or involving the same specific offense or cause of action; or having served as a trial or grand juror or on a jury within one year previously in any criminal or civil action or proceeding in which either

Appellant contends that equal protection concerns are violated when litigants in civil cases are given greater rights than litigants in criminal cases. "[O]nce the state has granted certain statutory rights to litigants, here the right to exercise peremptory challenges, the state cannot arbitrarily distinguish between various types of litigants unless that distinction rationally relates to a legitimate state goal. The question presented by Code of Civil Procedure sections 222.5 and 223 is why litigants in civil cases may ask potential jurors questions designed to aid in the intelligent exercise of peremptory challenges but litigants in criminal cases may not."[6]

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons

---

party was the plaintiff or defendant or in a criminal action where either party was the defendant.

"(d) Interest on the part of the juror in the event of the action, or in the main question involved in the action, except his or her interest as a member or citizen or taxpayer of a county, city and county, incorporated city or town, or other political subdivision of a county, or municipal water district.

"(e) Having an unqualified opinion or belief as to the merits of the action founded upon knowledge of its material facts or of some of them.

"(f) The existence of a state of mind in the juror evincing enmity against, or bias towards, either party.

"(g) That the juror is party to an action pending in the court for which he or she is drawn and which action is set for trial before the panel of which the juror is a member.

"(h) If the offense charged is punishable with death, the entertaining of such conscientious opinions as would preclude the juror finding the defendant guilty; in which case the juror may neither be permitted nor compelled to serve." (§ 229.)

[6]Appellant identifies and rejects several possible purposes for Proposition 115: "If the goal is to shorten the jury selection process, . . . there is no rational reason to make jury selection in criminal cases proceed faster than in civil cases. This goal cannot justify the distinction between the two statutes or between litigants in civil cases and those in criminal cases.

"Another possible goal might be to spare potential jurors the embarrassment of answering very personal questions in a public forum. While it is true that the potential for embarrassing questions may be greater in criminal cases than in civil cases, no studies have ever been made to demonstrate that. In any event, embarrassing questions are frequently asked in civil cases as well. Furthermore, a potential juror also has the right in both types of litigation to demand an *in camera* examination. While avoiding undue embarrassment of potential jurors is a laudable goal, it cannot form a rational basis for a distinction between civil and criminal litigants.

"A possible concern of the proponents of Proposition 115 may have been to make it difficult for defendants in criminal cases to develop adequate grounds for a challenge for cause. It is no secret that defendants raise more challenges for cause than do prosecutors and that most challenges are based upon factors that work against the defense [such as a bias in favor of the credibility of the police, personal experiences as the victim or relative or friend of a victim of the same or a similar crime, doubts about the fairness of the criminal justice system, antipathy towards the rights of suspects, and so on]. If this was the purpose underlying Proposition 115, it was an unlawful one. (*Parr* v. *Municipal Court* (1971) 3 Cal.3d 861, 864 [92 Cal.Rptr. 153, 479 P.2d 353]; laws that are de facto hostile to a certain group violate the equal protection clause.)"

similarly situated should be treated alike. [Citation.]" (*Cleburne* v. *Cleburne Living Center, Inc.* (1985) 473 U.S. 432, 439 [87 L.Ed.2d 313, 573, 105 S.Ct. 3249].)

Similarly, California Constitution article I, section 7 provides: "(a) A person may not be . . . denied equal protection of the laws . . . ." " ' "The concept . . . compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment." ' [Citations.]" (*In re Eric J.* (1979) 25 Cal.3d 522, 531 [159 Cal.Rptr. 317, 601 P.2d 549].) The equal protection guaranties of the California Constitution are substantially similar to the Fourteenth Amendment protections, although they have independent meaning and may provide broader rights than those available under the United States Constitution. (*Serrano* v. *Priest* (1976) 18 Cal.3d 728, 764-765 [135 Cal.Rptr. 345, 557 P.2d 929].)

Neither the federal nor the state equal protection clause denies the state the power to treat different classes of persons in different ways; however, both clauses deny the state the power to legislate that different treatment be accorded to persons placed by statute into different classes on the basis of criteria wholly unrelated to the object of the statute. (*Eisenstadt* v. *Baird* (1972) 405 U.S. 438, 446-447 [31 L.Ed.2d 349, 358-359, 92 S.Ct. 1029]; accord, *Hardy* v. *Stumpf* (1978) 21 Cal.3d 1, 8 [145 Cal.Rptr. 176, 576 P.2d 1342].)

■ "[T]he proponent of an equal protection claim must demonstrate that the challenged state action results in disparate treatment of persons who are similarly situated with regard to a given law's legitimate purpose." (*People* v. *Raszler* (1985) 169 Cal.App.3d 1160, 1167 [215 Cal.Rptr. 770].)[7]

### (a) *Level of Scrutiny*

■ "The first step in evaluating this contention is to determine the applicable level of judicial review. In *Curtis* v. *Board of Supervisors* (1972) 7 Cal.3d 942 . . . , we explained that: '[T]his court and the United States Supreme Court apply a two-level test. [Citation.] In the typical equal protection case the classification need only bear a rational relationship to a conceivable legitimate state purpose; "[on] the other hand, in cases involving 'suspect classifications' or touching on 'fundamental interests,' . . . the court has adopted an attitude of active and critical analysis, subjecting the classification to strict scrutiny. [Citations omitted.] ■ ■ Under the

---

[7]Respondent's brief asserted but did not support the claim that "appellant has wholly failed to show that civil litigants are similarly situated to criminal defendants."

strict standard applied in such cases, the state bears the burden of establishing not only that it has a *compelling* interest which justifies the law but that the distinctions drawn by the law are *necessary* to further its purpose." ' [Citations.]" (*Fullerton Joint Union High School Dist.* v. *State Bd. of Education* (1982) 32 Cal.3d 779, 798-799 [187 Cal.Rptr. 398, 654 P.2d 168], fn. omitted.)[8]

Both the United States and the California Supreme Courts have recognized that not every limitation or incidental burden on a fundamental right is subject to the strict scrutiny doctrine. When the regulation merely has an incidental effect on the exercise of protected rights, strict scrutiny is not applied. The doctrine is applied only when there exists a real and appreciable impact on, or a significant interference with, the exercise of a fundamental right. (*Lucas* v. *Superior Court* (1988) 203 Cal.App.3d 733, 738 [250 Cal.Rptr. 76].)

---

[8]Strict scrutiny is required for classifications affecting fundamental rights such as procreation (*Skinner* v. *Oklahoma* (1942) 316 U.S. 535 [86 L.Ed. 1655, 62 S.Ct. 1110]), interstate travel (*Shapiro* v. *Thompson* (1969) 394 U.S. 618 [22 L.Ed.2d 600, 89 S.Ct. 1322]; and see *Westbrook* v. *Mihaly* (1970) 2 Cal.3d 765, 785, fn. 38 [87 Cal.Rptr. 839, 471 P.2d 487]), and voting (*Fullerton Joint Union High School Dist.* v. *State Bd. of Education, supra*, 32 Cal.3d at pp. 798-806). (See generally Tribe, American Constitutional Law (2d ed. 1988) Model of Equal Protection, ch. 16, § 16-33, p. 1612.) Suspect classifications triggering strict scrutiny include those based on race (*McLaughlin* v. *Florida* (1964) 379 U.S. 184 [13 L.Ed.2d 222, 85 S.Ct. 283]) or wealth (*Douglas* v. *California* (1963) 372 U.S. 353 [9 L.Ed.2d 811, 83 S.Ct. 814]; see also *Westbrook* v. *Mihaly, supra*, 2 Cal.3d at pp. 784-785, fn. 37).

In addition, intermediate levels of scrutiny have been found appropriate. (See, Tribe, American Constitutional Law, *supra*, §§ 16-3, 16-26, pp. 1444, 1564 [positing a "heightened lower level" scrutiny and an "intermediate" scrutiny]; see also *Adoption of Kelsey S.* (1992) 1 Cal.4th 816 [4 Cal.Rptr.2d 615].) In analyzing this complex area, Professor Laurence H. Tribe explains: "Broadly speaking, there are two circumstances that trigger heightened scrutiny. The first involves infringement of 'important', although not necessarily 'fundamental', rights or interests." (Tribe, American Constitutional Law, *supra*, § 16-33, p. 1610, fn. omitted.) Examples of rights triggering intermediate scrutiny include education (*Plyler* v. *Doe* (1982) 457 U.S. 202 [72 L.Ed.2d 786, 102 S.Ct. 2382]), although under the California Declaration of Rights (Cal. Const., art. I, § 1) education is a fundamental right (*Serrano* v. *Priest , supra*, 18 Cal.3d 728, 764-766); employment in the federal competitive civil service (*Hampton* v. *Mow Sun Wong* (1976) 426 U.S. 88 [48 L.Ed.2d 495, 96 S.Ct. 1895]); and subsistence benefits such as food stamps (*U.S. Dept. of Agriculture* v. *Murry* (1973) 413 U.S. 508 [37 L.Ed.2d 767, 93 S.Ct. 2832]; *New Jersey Welfare Rights Org.* v. *Cahill* (1973) 411 U.S. 619 [36 L.Ed.2d 543, 93 S.Ct. 1700]). (See generally Tribe, American Constitutional Law, *supra*, § 16-33, pp. 1610-1613.)

"A second broad circumstance in which intermediate review has been triggered involves government's use of sensitive, although not necessarily suspect, criteria of classification." (Tribe, American Constitutional Law, *supra*, § 16-33, at p. 1613, fn. omitted.) Such criteria have included alienage (*Plyler* v. *Doe, supra*, 457 U.S. 202; *Hampton* v. *Mow Sun Wong, supra*, 426 U.S. 88), gender (*Reed* v. *Reed* ( 1971) 404 U.S. 71 [30 L.Ed.2d 225, 92 S.Ct. 251]), and mental retardation (*Cleburne* v. *Cleburne Living Center, Inc., supra*, 473 U.S. 432). (See generally Tribe, American Constitutional Law, *supra*, § 16-33, at pp. 1613-1618.) Professor Tribe notes that "[s]ome cases of intermediate review combine sensitive criteria of classification with important liberties or benefits." (*Id.* at p. 1613, fn. 22.)

■ Although a fair and impartial jury is a fundamental personal right, "[t]he Legislature [and the electorate (*In re Lance W.* (1985) 37 Cal.3d 873, 891 [210 Cal.Rptr. 631, 694 P.2d 744])] may . . . establish reasonable regulations or conditions on the enjoyment of the right [to a jury trial] as long as the essential elements of trial by jury are preserved. [Citation.]" (*People* v. *Collins* (1976) 17 Cal.3d 687, 692 [131 Cal.Rptr. 782, 552 P.2d 742].) The essential elements of a jury in criminal cases are number (12), unanimity, and impartiality. (*Patton* v. *United States* (1930) 281 U.S. 276 [74 L.Ed. 854, 50 S.Ct. 253, 70 A.L.R. 263]; *People* v. *Peete* (1921) 54 Cal.App. 333 [202 P. 51].)

In regard to jury selection, both federal and state courts have held that "voir dire is not of constitutional dimension[; therefore], limitations affecting peremptory challenges need not be reviewed with the close scrutiny reserved for encroachments on the fundamental rights of an accused." (*U.S.* v. *Scarfo* (3d Cir. 1988) 850 F.2d 1015, 1021.) The right to voir dire is not a constitutional right but is a means to achieve the end of an impartial jury. (*People* v. *Bittaker* (1989) 48 Cal.3d 1046, 1086 [259 Cal.Rptr. 630, 774 P.2d 659].)

In addition, the peremptory challenge is a statutory privilege, limited only by the necessity of having an impartial jury. (*People* v. *Ainsworth* (1988) 45 Cal.3d 984, 1005 [248 Cal.Rptr. 568, 755 P.2d 1017].) Consequently, there is no constitutional right to any particular manner of conducting the voir dire and selecting a jury so long as such limitations as are recognized by the settled principles of criminal law to be essential in securing impartial juries are not transgressed. (*Haith* v. *United States* (E.D.Pa. 1964) 231 F.Supp. 495, 498 quoting *Pointer* v. *United States* (1894) 151 U.S. 396, 407-408 [38 L.Ed. 208, 213-214, 14 S.Ct. 410].)

Since the enactment challenged here does not touch on a fundamental right or involve a suspect classification, we conclude that the rational relationship test is appropriate.

(b) *The Limitation*

Proposition 115 was a remedial measure enacted in June 1990 to make "comprehensive reforms . . . in order to restore balance and fairness to our criminal justice system." (Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Gen. Elec. (June 5, 1990) Text of Proposed Law, Prop. 115, § 1, subd. (a), p. 33.) The voters expressly found "that it is necessary to reform the law as developed in numerous California Supreme Court decisions and as set forth in the statutes of this state. These decisions

and statutes have unnecessarily expanded the rights of accused criminals far beyond that which is required by the United States Constitution, thereby unnecessarily adding to the costs of criminal cases, and diverting the judicial process from its function as a quest for truth." (*Id.* at p. 33.) "[T]he voters . . . expressly declared that their purposes were to reduce the unnecessary 'costs of criminal cases' and to 'create a system in which justice is swift and fair . . . .' (Prop. 115, § 1, subds. (b), (c).)" (*Tapia* v. *Superior Court* (1991) 53 Cal.3d 282, 293 [279 Cal.Rptr. 592, 807 P.2d 434], fn. omitted.)[9]

At the time Proposition 115 was enacted, all litigants enjoyed similar jury selection procedures. In 1988, The Trial Jury Selection and Management Act had been added to the Code of Civil Procedure. (§ 190 et seq.) It brought together in one code all provisions affecting both civil and criminal trial juries.[10] Examination of prospective jurors by civil litigants remained governed only by California Rules of Court, rules 228 and 516.[11] Criminal litigants were also subject to rule 228 as well as to statutory provisions

---

[9]The text of the proposed law contained the statement: "SECTION 1. (a) We the people of the State of California hereby find that the rights of crime victims are too often ignored by our courts and by our State Legislature, that the death penalty is a deterrent to murder, and that comprehensive reforms are needed in order to restore balance and fairness to our criminal justice system.

"(b) In order to address these concerns and to accomplish these goals, we the people further find that it is necessary to reform the law as developed in numerous California Supreme Court decisions and as set forth in the statutes of this state. These decisions and statutes have unnecessarily expanded the rights of accused criminals far beyond that which is required by the United States Constitution, thereby unnecessarily adding to the costs of criminal cases, and diverting the judicial process from its function as a quest for truth.

"(c) The goals of the people in enacting this measure are to restore balance to our criminal justice system, to create a system in which justice is swift and fair, and to create a system in which violent criminals receive just punishment, in which crime victims and witnesses are treated with care and respect, and in which society as a whole can be free from the fear of crime in our homes, neighborhoods, and schools.

"(d) With these goals in mind, we the people do hereby enact the Crime Victims Justice Reform Act." (Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Gen. Elec. (June 5, 1990) Text of Proposed Law, Prop. 115, p. 33.)

[10]Before that time, criminal jury selection procedures were located in Penal Code section 1055 et seq. Examination of prospective jurors was governed by Penal Code section 1078 and California Rules of Court, rule 228. General provisions for civil juries appeared in section 190 et seq. of the Code of Civil Procedure, but jury selection procedures for civil litigants were covered only by California Rules of Court, rules 228 and 516.

[11]California Rules of Court, rules 228 and 516 followed the language of Penal Code former section 1078, adopted in 1927, and made available to civil litigants jury selection practices available in criminal cases. (*Rousseau* v. *West Coast House Movers* (1967) 256 Cal.App.2d 878, 882, 885 [64 Cal.Rptr. 655].)

Immediately prior to the enactment of Proposition 115, rule 228 commenced: "This rule applies to all civil jury trials and to all criminal jury trials, except as provided in Code of Civil Procedure section 223.5." Both rules continued: "To select a fair and impartial jury, the trial judge shall examine the prospective jurors and upon completion of the initial examination the trial judge shall permit counsel for each party who so requests to submit additional questions

which were transferred from the Penal Code to former section 223 (and to § 223.5 for a special voir dire pilot project).[12]

Both civil and criminal litigants were allowed to voir dire in aid of the exercise of peremptory challenges. "From 1912 to 1981 . . . the law in California under *People* v. *Edwards* [(1912) 163 Cal. 752 (127 P. 58)] did not permit questions designed solely to obtain information upon which to base the exercise of a peremptory challenge." (DeFalla, *Voir Dire for California's Civil Trials; Applying the Williams Standard* (1988) 39 Hastings L.J. 517, 524.) However, that right was given to criminal defendants in *People* v. *Williams* (1981) 29 Cal.3d 392 [174 Cal.Rptr. 317, 628 P.2d 869], and to civil litigants in *Holley* v. *J & S Sweeping Co.* (1983) 143 Cal.App.3d 588 [192 Cal.Rptr. 74].

Former section 223 did not declare that criminal litigants had a right to propound such questions, but did provide that "(4) The attorneys' need, under the circumstances, for information on which to exercise peremptory challenges intelligently" was one criterion for the court to consider in exercising its discretion and control with respect to voir dire. (See Stats. 1988, ch. 1245, § 2, p. 4149.) Shortly after the enactment of Proposition 115, the Legislature codified the right of civil litigants to examine prospective jurors in aid of the exercise of peremptory challenges in section 222.5.

For criminal litigants now, section 223 parallels the system used in the federal courts in both civil and criminal cases, although it is not identically worded with the Federal Rules of Criminal Procedure.[13] In practice, voir dire in federal courts is essentially conducted by the judge. (See Comment,

which the judge shall put to the jurors. Upon request of counsel, the trial judge shall permit counsel to supplement the judge's examination by oral and direct questioning of any of the prospective jurors. The scope of the additional questions or supplemental examination shall be within reasonable limits prescribed by the trial judge in the judge's sound discretion.

"In civil cases, the court may, upon stipulation by counsel for all parties appearing in the action, permit counsel to examine the prospective jurors outside a judge's presence."

In June 1990, rule 228 was amended to conform with Proposition 115 to apply to civil trials only, and the language of both rules was changed slightly.

[12]Former section 223 directed the trial court to "permit reasonable examination of prospective jurors by counsel for the people and for the defendant, such examination to be conducted orally and directly by counsel." (Subd. (a); see Stats. 1988, ch. 1245, § 2, p. 4148.) Subdivision (b) imposed a duty on the trial judge "to provide for a voir dire process as speedy, focused, and informative as possible . . . ." (See Stats. 1988, ch. 1245, § 2, p. 4148.) The court had discretion in controlling voir dire (subd. (c)), and was to be guided by, among other factors, "(4) The attorneys' need, under the circumstances, for information on which to exercise peremptory challenges intelligently." (*Id.* at p. 4149.)

[13]Federal Rules of Criminal Procedure, rule 24, subdivision (a), (18 U.S.C.), provides: "The court may permit the defendant or the defendant's attorney and the attorney for the government to conduct the examination of prospective jurors or may itself conduct the examination.

*Procedure —Scope of Voir Dire—Defendants Are Not Deprived of Intelligent Use of Peremptories by Voir Dire Restrictions Intended to Protect Potential Jurors' Safety and Privacy* (1979) 55 Notre Dame Law. 281, 282, fn. 13, and p. 285, fn. 39.) If the court conducts the voir dire itself, the court "shall permit" counsel for the litigants to supplement the examination by questions propounded either by them or the court. (See *ante*, our fn. 13.) Under section 223, supplementation by counsel for the parties is discretionary upon a showing of good cause.

The "federal system" was approved for use in California in civil cases in 1967 (*Rousseau* v. *West Coast House Movers, supra*, 256 Cal.App.2d 878), and for criminal cases in 1973 (*People* v. *Crowe* (1973) 8 Cal.3d 815 [106 Cal.Rptr. 369, 506 P.2d 193]).

█ If there is sufficient questioning to produce some basis for a reasonably knowledgeable exercise of the right of challenge, voir dire by the trial judge alone does not deprive a defendant of the right to adequate voir dire under the Sixth and Fourteenth Amendments. (*U.S.* ex rel. *Burns* v. *Haws* (1989) 717 F.Supp. 600, 602-603; *People* v. *Crowe, supra*, 8 Cal.3d at p. 824.)

### (c) *The Basis for the Classification*

█ At oral argument, appellant asserted that before a legislative body could create a classification, an evidentiary basis for the classification must be shown. Specifically, he contends that there must be some proof that criminal but not civil litigants would abuse the right to ask questions during voir.

Appellant relies on *Craig* v. *Boren* (1976) 429 U.S. 190 [50 L.Ed.2d 397, 97 S.Ct. 451] and *Plyler* v. *Doe, supra*, 457 U.S. 202, for this proposition. Both are cases in which the United States Supreme Court applied a heightened level of scrutiny. (See *ante*, fn. 8.)

In *Craig* v. *Boren*, the court stated that "the gender-based difference [in Oklahoma's 3.2 percent beer sales statutes must] be substantially related to achievement of the statutory objective." (429 U.S. at p. 204 [50 L.Ed.2d at p.

---

In the latter event the court shall permit the defendant or the defendant's attorney and the attorney for the government to supplement the examination by such further inquiry as it deems proper or shall itself submit to the prospective jurors such additional questions by the parties or their attorneys as it deems proper."

The civil rule is identical except the phrase "the parties or their attorneys" is substituted for "the defendant's attorney and the attorney for the government." (Fed. Rules Civ.Proc., rule 47, subd. (a), (28 U.S.C.).)

411].) In *Plyler* v. *Doe*, the court reviewed a Texas statute which denied a free public education to children who were not legally admitted to the United States. After stating that undocumented aliens are not a suspect class and education is not a fundamental right, the court declared: "In determining the rationality of [the statute], we may appropriately take into account its costs to the Nation and to the innocent children who are its victims. In light of these countervailing costs, the discrimination contained in [the statute] can hardly be considered rational unless it furthers some substantial goal of the State." (457 U.S. at pp. 223-224 [72 L.Ed.2d at p. 803].)

The scrutiny applied in these cases involved considerations which are irrelevant under the deferential rational relationship test, where the classification need bear only a rational relationship to any legitimate purpose of which the court can conceive. ■ "In the absence of invidious discrimination . . . a court is not free under the aegis of the Equal Protection Clause to substitute its judgment for the will of the people of a State as expressed in [its] laws . . . ." (*Parham* v. *Hughes* (1979) 441 U.S. 347, 351 [60 L.Ed.2d 269, 274-275, 99 S.Ct. 1742].) "So long as the state purpose upholding a statutory class is legitimate and nonillusory, its lack of primacy is not disqualifying." (*McGinnis* v. *Royster* (1973) 410 U.S. 263, 276 [35 L.Ed.2d 282, 292, 93 S.Ct. 1055].)

■ Consequently, a claim such as appellant's, that the People bear the burden of establishing a basis for the classification, is valid only if the classifications are among those considered suspect or result in the impairment of a fundamental interest of one of the classes. Under the rational relationship test, which we have determined to be appropriate here, the legislative " 'classification need only bear a rational relationship to a conceivable legitimate state purpose.' " (*Fullerton Joint Union High School Dist.* v. *State Bd. of Education, supra,* 32 Cal.3d at p. 799, citations omitted.)

### (d) *Rational Relationship*

■ Finally, appellant asserts that no matter how loftily the goals of Proposition 115 are stated, the real purpose of the enactment was to "invidiously discriminate against criminal defendants."

We reject that assertion.

Proposition 115 was enacted to restore balance and fairness to the criminal justice system and create a system in which justice is swift and fair by reforming the law as it had recently been developed in court decisions and

statutes. (See Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Gen. Elec. (June 5, 1990) Text of Proposed Law, Prop. 115, § 1, subds. (a), (b), (c), p. 33.)

These goals are not new. Periodic jury selection procedure reforms have addressed the same problems, for the same reasons, and have been acknowledged as valid by our courts.

After voir dire became the primary responsibility of the trial judge in 1927, our Supreme Court stated: "[T]he purpose of the enactment [Penal Code section 1078], of course, [was] to expedite the trial of criminal causes, and to correct the abuse which has grown up in this jurisdiction, through tedious and unnecessary examination of prospective jurors in criminal cases. It has become a matter of common knowledge in this state that the efforts on the part of counsel for defendants in criminal cases have developed into attempts to disqualify jurors, rather than to seek to ascertain their qualifications. The purpose of the statute, however, was not to bring about expedition by depriving either the People, or defendants charged with the commission of offenses, of the right of a reasonable examination of prospective jurors, and the legislature was particular to provide for that right." (*People* v. *Estorga* (1928) 206 Cal. 81, 84 [273 P. 575].)

Penal Code section 1078 was held not to deprive a defendant of "any substantial right . . . . Nor was he deprived of a fair and impartial trial by a jury of twelve men . . . ." (*People* v. *Edenburg* (1928) 88 Cal.App. 558, 565 [263 P. 857].)

Nevertheless, the actuality of jury selection remained unsatisfactory. In 1971, it was still "commonplace knowledge that there have been extensive abuses by counsel on *voir dire* examination by engaging in tedious and time-wasting questions, which are seemingly interminable and repetitious and designed in many instances to accomplish purposes other than the legitimate objects of a reasonable *voir dire* examination. The necessity of eliminating huge case backlogs, of obtaining effective and productive dispatch of court business, of avoiding expense and wasted court time, of maintaining public confidence in our court system, and of not wasting the time and energy of jurors, dictates that such wearisome, time-wasting abuses be eliminated." (*People* v. *Adams* (1971) 21 Cal.App.3d 972, 979 [99 Cal.Rptr. 122].)

There is no doubt that trial court delays for both civil and criminal litigants have been and are perceived as a significant problem. Nevertheless, in enacting legislation, neither the Legislature nor the

voters are bound, "in order to adopt a constitutionally valid statute, to extend it to all cases that might possibly be reached [citation], but [are] free to recognize degrees of harm and make restrictions affecting those classes of cases wherein the need is deemed to be clearest. [Citation.] The Legislature, in dealing with practical exigencies, may be guided by experience and is at liberty to select one phase of a problem for appropriate action without the necessity of including all others that might be affected in the same field of legislation. [Citations.] But when the legislative body proposes to address an area of concern in less than comprehensive fashion by 'striking the evil where it is felt most,' its decision as to where to 'strike' must have a rational basis in light of the legislative objectives. [Citations.]" (*People* v. *Banner* (1992), 3 Cal.App.4th 1315, 1323 [5 Cal.Rptr.2d 125].)

 Proposition 115 is another attempt to balance competing interests. As articulated by our courts in the past, these include the interests of the parties in trying their case before a fair and impartial jury, the interest of the jurors in conserving their time and energies and avoiding unwarranted intrusion into their personal affairs, the interest of the general public in encouraging its citizens to serve as jurors and in avoiding the expense of wasted court time, the interest of other litigants in the availability of court facilities, and the interest of the trial court in effective and productive dispatch of its business. (*Rousseau* v. *West Coast House Movers, supra,* 256 Cal.App.2d at p. 885.) To these, Proposition 115 adds the interest of victims and witnesses in the timely resolution of the issues.

 The California constitutional guarantee of a jury trial "does not require adherence to the letter of common law practice, and new procedures better suited to the efficient administration of justice may be substituted if there is no impairment of the substantial features of a jury trial." (*Dorsey* v. *Barba* (1952) 38 Cal.2d 350, 356 [240 P.2d 604].)

 The establishment of different procedures for different classes, both allowing participation by the parties in the selection of a fair and impartial jury, does not create a "dual court system." (Cf. *Crawford* v. *Los Angeles Board of Education* (1982) 458 U.S. 527, 542 [73 L.Ed.2d 948, 959, 102 S.Ct. 3211].) "[H]aving gone beyond the requirements of the Federal Constitution, the State was free to return in part to the standard prevailing generally throughout the United States." (*Ibid.*)

Appellant's challenge is rejected.

4., 5.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## 6. Disposition

The judgment is affirmed.

Cottle, Acting P. J., concurred.

**CAPACCIOLI, J.,** Concurring.—I concur in the result and in most of the majority opinion. However, with respect to those portions of the opinion dealing with jury selection procedures, I concur in the result only, for the reasons expressed in *People* v. *Leung, post,* page 482 [7 Cal.Rptr.2d 290], filed simultaneously with this opinion.

Appellant's petition for review by the Supreme Court was denied June 18, 1992.

---

*See footnote, *ante*, page 463.