53 Cal.App.4th 658 (1997)
THE PEOPLE, Plaintiff and Respondent,
v.
PAUL CHRISTOPHER BUCKLEY et al., Defendants and Appellants.
Docket No. A067809.
Court of Appeals of California, First District, Division Two.
March 18, 1997.
*660 COUNSEL
Carol Strickman and Eric Weaver, under appointments by the Court of Appeal, for Defendants and Appellants.
Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, *661 Ronald S. Matthias and Herbert F. Wilkinson, Deputy Attorneys General, for Plaintiff and Respondent.
[Opinion certified for partial publication.[]]
OPINION
HAERLE, J. 

I. INTRODUCTION
Appellants Daniel Adam Wade (Wade) and Paul Christopher Buckley (Buckley) (collectively appellants) were convicted by a jury of various charges stemming from a shoot-out with police officers from the Richmond Police Department when the latter attempted to serve a search warrant at their apartment.
Appellants raise the following trial errors on appeal: (1) the trial court improperly denied their Wheeler/Batson motion;[1] (2) the jury committed prejudicial misconduct; (3) the prosecutor committed misconduct; (4) appellants' motion to suppress evidence was improperly denied; (5) the trial court erred by excluding evidence as to what a reasonable person would have believed when the officers started battering the apartment door; (6) police testimony about the mental state of marijuana sellers was erroneously admitted; (7) the trial court erred in admitting the search warrant; (8) the trial court failed to properly instruct the jury on the mental element of knowledge; (9) the trial court erred in denying appellants' requested jury instruction on the reliability of spontaneous statements; (10) the trial court erred by failing to properly instruct on the issue of self-defense; and (11) appellants' right to have the jury determine all issues was violated by the trial court's failure to instruct them on knock-and-notice requirements. In addition, Buckley also contends he was improperly convicted of four counts because there was no evidence he intended to assault four different people. We reject each of these contentions and affirm the judgment.

II. PROCEDURAL AND FACTUAL BACKGROUND[*]
.... .... .... .... .... .... .... .

*662 III. DISCUSSION

A. Wheeler/Batson Claim

(1a) Appellants contend that the prosecutor used peremptory challenges to exclude members of a cognizable group from the jury in violation of their right to trial by a jury drawn from a representative cross-section of the community, guaranteed by article I, section 16, of the California Constitution, and of the prospective juror's right of equal protection. (Wheeler, supra, 22 Cal.3d 258; Batson, supra, 476 U.S. 79.) We disagree.
As recited in the facts above, this case involved two African-American men who shot and injured two Richmond police officers.[14] When the prosecutor used two of his peremptory challenges to strike two African-American women, Vera Rutherford (Rutherford) and Joann James (James), counsel for both appellants moved for a mistrial under Wheeler on the grounds that the prosecutor had struck the women solely on the basis of their race.[15] The trial court denied both motions finding that no prima facie case had been established.[16] The jury that was ultimately impaneled contained one African-American juror, a fact not mentioned by our dissenting colleague, but a pertinent fact nonetheless. (See, e.g., People v. Dunn (1995) 40 Cal. App.4th 1039, 1053-1054 [47 Cal. Rptr.2d 638].)
*663 (2) It is well established that the use of peremptory challenges to remove prospective jurors solely on the basis of a presumed group bias violates both *664 the state and federal Constitutions. (People v. Turner (1994) 8 Cal.4th 137, 164 [32 Cal. Rptr.2d 762, 878 P.2d 521] (Turner).) "`"[I]f a party believes his opponent is using his peremptory challenges to strike jurors on the ground of group bias alone, he must raise the point in timely fashion and make a prima facie case of such discrimination to the satisfaction of the court. First, ... he should make as complete a record of the circumstances as is feasible. Second, he must establish that the persons excluded are members of a cognizable group within the meaning of the representative cross-section rule. Third, from all the circumstances of the case he must show a strong likelihood that such persons are being challenged because of their group association."'" (Ibid., citing People v. Howard (1992) 1 Cal.4th 1132, 1153-1154 [5 Cal. Rptr.2d 268, 824 P.2d 1315] (Howard), italics in original.) "Once the moving party has established a prima facie case, the burden shifts to the other party to come forward with a race-neutral explanation related to the particular case to be tried. [Citations.]" (People v. Fuentes (1991) 54 Cal.3d 707, 714 [286 Cal. Rptr. 792, 818 P.2d 75].)
(3) In reviewing a Wheeler motion, "... we must begin by recognizing there is a presumption a party exercising a peremptory challenge is doing so on constitutionally firm ground." (People v. Bernard (1994) 27 Cal. App.4th 458, 465 [32 Cal. Rptr.2d 486] (Bernard).) Because a challenge is presumed valid, it is incumbent for the defendant to show a "strong likelihood" that jurors were challenged because of their group association and not for a genuine, nondiscriminatory purpose. (People v. Garceau (1993) 6 Cal.4th 140, 171 [24 Cal. Rptr.2d 664, 862 P.2d 664].)[17] "A defendant may not simply rely upon exclusion of the group-associated prospective jurors in establishing `a strong likelihood' of removal because of group bias. [Citation.] Rather, a defendant should underscore `other relevant circumstances, such as prospective jurors' characteristics, the nature of the prosecutor's voir dire, or the prospective jurors' answers to questions....' [Citation.]" (Bernard, supra, 27 Cal. App.4th at p. 466.)
Ruling on Wheeler motions "`"requires trial judges to make difficult and often close judgments. They are in a good position to make such determinations, however, on the basis of their knowledge of local conditions and of *665 local prosecutors." [Citation.] They are also well situated to bring to bear on this question their powers of observation, their understanding of trial techniques, and their broad judicial experience. We are confident of their ability to distinguish a true case of group discrimination by peremptory challenges from a spurious claim....'" (People v. Sanders (1990) 51 Cal.3d 471, 501 [273 Cal. Rptr. 537, 797 P.2d 561] (Sanders), citing Wheeler, supra, 22 Cal.3d at p. 281, quoting Kuhn, Jury Discrimination: The Next Phase (1968) 41 So.Cal.L.Rev. 235, 295, fn. 5.) When reviewing the denial of a Wheeler motion where the trial court has not found a prima facie case of group bias, we consider the entire voir dire record. (Howard, supra, 1 Cal.4th at p. 1155.) We examine the record, as with other findings of fact, for evidence to support the trial court's ruling. (Ibid.) "If the record `suggests grounds upon which the prosecutor might reasonably have challenged' the jurors in question, we affirm." (Ibid., citing People v. Bittaker (1989) 48 Cal.3d 1046, 1092 [259 Cal. Rptr. 630, 774 P.2d 659].)
(1b) We conclude that the trial court acted within its discretion in determining that defense counsel had failed to make a showing of prima facie discrimination.[18] In particular, defense counsel failed to establish from all the circumstances of the case a strong likelihood that such persons were being challenged because of their group association. (Turner, supra, 8 Cal.4th at p. 167; People v. Howard, supra, 1 Cal.4th at p. 1154.) Rather, the only bases for establishing a prima facie case cited by defense counsel were that (1) the defendants were African-American, (2) both of the women were African-American and (3) nothing in their questionnaires or responses to oral questions would indicate a particular reason why they would not be suitable jurors. That was the sum total of the defense presentation. But this quantum of showing has consistently been held to be insufficient in demonstrating a strong likelihood that the prospective jurors were being challenged on the basis of their group association. (Turner, supra, 8 Cal.4th at p. 167 *666 [defense counsel's statement that all of the challenged prospective jurors were Black and either indicated that they could be fair and impartial or in fact favored the prosecution was insufficient]; Howard, supra, 1 Cal.4th at p. 1154 [defendant's statement that two Blacks were excluded because they were Black and for no other reason was found insufficient]; People v. Rousseau (1982) 129 Cal. App.3d 526, 536-537 [179 Cal. Rptr. 892] [defense counsel's statement that "`there were only two [B]lacks on the whole panel, and they were both challenged by the district attorney'" failed to establish a prima facie case]; Bernard, supra, 27 Cal. App.4th at p. 468 [no strong likelihood found where defense counsel simply summarized the background of two challenged African-American jurors and stated that they would make good jurors].) Moreover, the prosecutor accepted a jury which included an African-American.[19] "While the fact that the jury included members of a group allegedly discriminated against is not conclusive, it is an indication of good faith in exercising peremptories...." (Turner, supra, 8 Cal.4th at p. 168.)
The prosecutor used his third peremptory challenge to excuse Rutherford.[20] Rutherford was a 51-year-old legal technician. She had a business degree from San Francisco City College. She had always worked in legal departments and was presently employed by the Department of Labor. Her duties included keeping an administrative law judge's calendar and getting him prepared for hearings. She had received on-the-job training but hadn't had any formal legal training. She had no experience with criminal law. She had lived in San Pablo for 15 years and was concerned about burglaries and shootings in her neighborhood. She had a friend who was once arrested for driving under the influence (DUI) by the Martinez Police Department. She was a passenger in the car at the time and testified as a witness at a hearing. The charges were dropped. Rutherford stated that she believed her friend was treated fairly by the police and the district attorney's office, although she listed the experience as "not bad" in her juror questionnaire.
The prosecutor used a later peremptory challenge to excuse prospective juror James. She testified that she recognized one of the appellants, having seen him in Richmond before. She stated that she believed that search warrants "do a quite a bit of damage, which is unnecessary." She also testified that she often went by the location of the crime when she took the bus, but that she was not taking that route to get to court. James also testified *667 that her brother had been arrested for burglary in Berkeley and was presently in jail. She did not know if he had been treated fairly by the police. She also stated that her brother had also taken illegal drugs in the past. In addition, James testified that she had owned a firearm and had shot it at a range, but that it had been stolen.
Inasmuch as the trial court explicitly ruled that no prima facie case of group bias had been made, the law is absolutely clear, our dissenting colleague notwithstanding, that the prosecution was not required to offer any justification for its challenges. (Howard, supra, 1 Cal.4th at p. 1157 ["the court ha[s] no occasion to ask for explanations unless and until it found a prima facie case of group bias"]; see also Bernard, supra, 27 Cal. App.4th 458, 469; People v. Fuentes, supra, 54 Cal.3d at pp. 716-717, fn. 5.) Contrary to the implication of the dissent (dis. opn., post, at p. 677), there is no case which stands for the proposition that, at this juncture, the prosecution was required to say anything.
We must uphold the ruling as long as there might have been a justifiable rationale for the challenges. Hence, we look to see whether there are race-neutral reasons why a prosecutor might have challenged Rutherford and James. We do so to determine whether or not the appellants met their burden of showing a "strong likelihood" that such jurors were struck because of their group association. It is clearly uncomfortable for an appellate court to postulate hypothetical reasons a prosecutor might have challenged each juror. We note, however, that we would not be forced to comb the record for evidence of racial bias and/or hypothecate why jurors were excluded if appellants had articulated with some specificity the bases for the Wheeler challenge. Nonetheless, we are satisfied that there are specific race-neutral reasons to challenge both Rutherford and James.[21]
Rutherford had a history of working in various legal departments and had received on the job legal training. She worked with and knew lawyers, *668 judges and court personnel. Her professional training "`suggest[ed] grounds upon which the prosecutor might reasonably have challenged'" her. (Howard, supra, 1 Cal.4th at p. 1156, citing People v. Bittaker, supra, 48 Cal.3d at p. 1092.) In addition, Rutherford had experience with the criminal justice system based on her involvement with her friend's DUI case. Although she stated verbally that she felt her friend was treated fairly, she initially characterized it with the more puzzling "not bad" phrase in her juror questionnaire. In any event, the prosecutor may have felt that her experience with the criminal justice system was reason enough for exclusion. (People v. Barber (1988) 200 Cal. App.3d 378, 394-395 [245 Cal. Rptr. 895].)
In addition, there were a number of race-neutral reasons why the prosecutor might challenge James. She had seen Wade in Richmond and was familiar with the neighborhood where the shootings occurred. (See People v. Cummings (1993) 4 Cal.4th 1233, 1282 [18 Cal. Rptr.2d 796, 850 P.2d 1].) James's brother was incarcerated for burglary. (People v. Garceau, supra, 6 Cal.4th at p. 172.) Finally, she expressed anti-law-enforcement sentiment when she stated her feelings about search warrants. (Turner, supra, 8 Cal.4th at p. 170.)[22]
Based on our independent examination of the record, which did not reveal anything that demonstrated that the prosecutor's challenges were motivated by group rather than specific bias,[23] we agree with the trial court that the defense counsel failed to establish a "strong likelihood" that Rutherford and James were challenged because of their group association.
In addition, we note that this case is factually similar to Bernard, supra, 27 Cal. App.4th at page 468.[24] In Bernard, the defense counsel made Wheeler motions after two African-American potential jurors had been struck. The *669 defense counsel pointed out that his client was African-American and was being charged with a crime against a White victim. As in this case, the defense counsel then described the characteristics of the potential jurors that were excluded and argued that they would make good jurors. The trial court did not request the prosecutor's reasons for excluding the two jurors because it found that the defense counsel's showing had failed to demonstrate that that there was a strong likelihood the jurors were being struck based on their group association. The appellate court agreed; in addition, it noted that, as in this case, the prosecution excused only two of five African-Americans on the panel and the jury that was ultimately impaneled contained an African-American.[25] (Id. at pp. 466-468.)
Based on the above, we find that appellants' constitutional rights were not violated by the prosecutor's use of peremptory challenges.[26]
B.-L.[*]
.... .... .... .... .... .... .... .

IV. DISPOSITION
The judgments are affirmed as to both appellants.
Lambden, J., concurred.
KLINE, P.J.
I respectfully dissent. The majority's strained effort to conjure up a racially neutral explanation for the peremptory challenge of Vera Rutherford is defeated by the record, which provides no such explanation. There is simply no fair basis upon which to approve the trial court's failure to call upon the district attorney to offer such an explanation, if he could, or, at the very least, to respond to the motion by explaining why no *670 prima facie case had been made. On the basis of little more than post hoc judicial guesswork, the majority undermines the important constitutional principle articulated in People v. Wheeler (1978) 22 Cal.3d 258 [148 Cal. Rptr. 890, 583 P.2d 748] and Batson v. Kentucky (1986) 476 U.S. 79 [106 S.Ct. 1712, 90 L.Ed.2d 69].
The problem in this case is not so much the presence of racial discrimination in the selection of the jury  for that has not been dispositively established  but the abdication of trial court responsibility to satisfactorily determine the presence of such discrimination, which is as pernicious and even more ominous a problem.
As Justice Mosk pointed out in Wheeler, "the courts cannot be pacifists" in the "war" between racial discrimination in jury selection and our basic concepts of a democratic society. (People v. Wheeler, supra, 22 Cal.3d at p. 267.) The Wheeler court understood that the integrity of judicial institutions and the respect in which those institutions are held (which is the fundamental source of judicial authority) rest in large part upon the efficacy of judicial supervision of the use of peremptory challenges. Federal courts are equally aware of this. Thus in Powers v. Ohio (1991) 499 U.S. 400 [111 S.Ct. 1364, 113 L.Ed.2d 411], Justice Kennedy noted that it is not only the defendant's right to be judged by an impartial jury that is at stake but the interests of jurors and the entire society, as the exclusion of jurors on the basis of race "condones violations of the United States Constitution within the very institution entrusted with its enforcement, and so invites cynicism respecting the jury's neutrality and its obligation to adhere to the law." (Id., at p. 412 [111 S.Ct. at p. 1371].)
The requirement that a party making a Wheeler motion must show a "strong likelihood" that the challenge is based solely on group bias (22 Cal.3d at p. 280), even if meant by our Supreme Court to impose a more stringent standard than the "inference" of bias that suffices under Batson v. Kentucky, supra, 476 U.S. 79, 96 [106 S.Ct. 1712, 1723][1]  was certainly not designed to make it almost impossible, as a practical matter, for a litigant to vindicate the right the Wheeler court went to such pains to establish. But that is, in effect, what the majority has done in this case. If the array of pertinent factors indicative of bias in this case do not add up to the "strong likelihood" required by Wheeler then Wheeler is a dead letter except in the rare instance in which the bias of counsel is overt.
By relieving the trial court of the duty to indicate the basis of its finding that a prima facie case has not been shown (which can be accomplished with *671 ease and dispatch), or at least to invite the party who has made the questioned peremptory challenge to explain why the objecting party has not made a prima facie case  which does not even require an explanation of the reason for the peremptory challenge (People v. Fuentes (1991) 54 Cal.3d 707, 716, fn. 5 [286 Cal. Rptr. 792, 818 P.2d 75])  the majority not only undermines Wheeler, but accepts an oppressive and inevitably speculative reviewing responsibility ill-suited to already overburdened reviewing courts. This case demonstrates that, unless trial judges are attentive to the problem, the system of court-conducted voir dire instituted in California in 1990 (see discussion, post, at p. 677, fn. 5), which relieves counsel of the duty to engage jurors in voir dire, can improperly obstruct enforcement of Wheeler.
As will be seen, the racially neutral explanation conjured by the majority on the basis of surmise and "`isolated bits of evidence'" favorable to one side (People v. Johnson (1980) 26 Cal.3d 557, 577 [162 Cal. Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255]) ignores characteristics of jurors passed by the prosecution comparable to those of Ms. Rutherford. The majority exerts itself to resolve the considerable doubt that exists as to the prosecutor's motive against appellant, contrary to the principle that in resolving doubts whether a party has made out a prima facie case of group bias, "... it is preferable for the court to err on the side of the defendant's right to a fair and impartial trial." (United States v. Chinchilla (9th Cir.1989) 874 F.2d 695, 698, fn 5. (per Judge Spencer Williams); Turner v. Marshall (9th Cir.1995) 63 F.3d 807, 814.)
Appellants made the requisite showing of group bias. The trial court ignored both the evidence and its own responsibility to help rather than hinder ascertainment of the truth.

I.
The basis of appellants' Wheeler motion should be perfectly obvious: Ms. Rutherford's characteristics and the fact that her responses to written and oral questions, when compared to the answers of all other prospective jurors, provides no apparent race-neutral basis upon which to differentiate her from the Caucasian jurors permitted to serve (and doubtless numerous other prospective jurors passed by the prosecution)[2] and the community at large. The absence of any attempt by the district attorney to question Ms. Rutherford at all, and the manner in which he exercised his peremptory challenge *672 of Ms. Rutherford, which will be described presently, also raise questions about the reason for the challenge. In light of these factors, and in view of the racial aspect of the issues presented to the jury,[3] the absence of any apparent race-neutral justification for the removal of Ms. Rutherford creates the facially strong likelihood race played a role.
The post hoc rationalization advanced by the majority can and must be tested by an examination of the whole record. "[W]hen a trial court denies a Wheeler motion without finding a prima facie case of group bias the reviewing court considers the entire record of voir dire." (People v. Howard (1992) 1 Cal.4th 1132, 1155 [5 Cal. Rptr.2d 268, 824 P.2d 1315], italics added.) If the majority is correct that Ms. Rutherford was excluded because she was familiar with the criminal justice system and knew people employed in the justice process, its theory would survive analysis in light of the entire voir dire. It clearly does not.
The majority conjures two nonracial justifications for the removal of Ms. Rutherford: first, the fact that she worked in legal departments "and knew lawyers, judges and court personnel" (maj. opn., ante, at pp. 667-668); and, second, that she had experience with the criminal justice system. Neither of these putative "justifications" stands up to scrutiny. The prosecution passed numerous prospective Caucasian jurors who had far more contacts with the criminal and civil justice systems than Ms. Rutherford and knew more regular participants in those systems.
For example, Leroy Vukad was a traffic engineer employed by Contra Costa County who had "given well over 200 depositions, prepared numerous interrogatories," and testified in court "many times" both in behalf of the county and, when subpoenaed, in behalf of plaintiffs. He also testified in a civil case in which the plaintiff sought damages for assault and battery. Mr. Vukad had a cousin in the Antioch Police Department and a friend in the California Highway Patrol. Diane Stadtmiller was a secretary for the F.B.I. for 12 years, was secretary to the deputy chief of the Richmond Police Department for 3 years, and knew many police and other law enforcement officers. Jacqueline James, who was employed by Contra Costa County, appeared in the small claims court in behalf of the public works department. She was also employed as a temporary clerk for the probation department, where she worked in the "Victim/witness program," and was a clerk in the *673 district attorney's office, where she met deputy district attorneys and public defenders. Marcia Eaton was a claims adjuster for Travelers Insurance Company and "investigate[d] and handle[d] 3rd party liability claims" and "appeared with clients in small claims court." Diane Cronin had testified in domestic relations proceedings relating to the division of property, child support and custody, and Roberta Shenk was friendly with a superior court judge. All of these passed jurors were Caucasian.
Ms. Rutherford's single contact with the criminal justice system, which occurred 10 years ago, did not differentiate her from other prospective jurors and was, in any case, hardly the sort to justify prosecutorial concern regarding her impartiality. First of all, the person she knew who had been charged with driving under the influence was "a friend of a friend" and therefore "pretty far removed" from her personally. The person had been treated fairly by the police and by the district attorney's office and the charges were dropped prior to trial. Furthermore, Ms. Rutherford stated that, unlike many of the Caucasian jurors passed by the district attorney, she had no contacts whatsoever with the criminal justice system. Neither she nor any close friends or relatives had any legal training, including "on-the-job training," or had ever been employed by or otherwise affiliated with any law enforcement agency. Ms. Rutherford also said she was concerned about crime, in particular burglary and shootings. She felt that drug abuse had a "bad" effect on the community and "should be stopped." Ms. Rutherford's answers to the questionnaire and her responses on voir dire were far less indicative of antipathy to law enforcement than those of Juror James Wackerly, who was obliged to appear in court in connection with a traffic citation from the Oakland Police Department, and was "dissatisfied" with the way the Pittsburgh Police Department responded to a burglary of his home. The prosecution raised no objection to Mr. Wackerly, who was also Caucasian.
Defense counsel in this case relied no more solely upon the circumstance that the challenged juror was Black than did counsel in People v. Crittenden (1994) 9 Cal.4th 83, 116 [36 Cal. Rptr.2d 474, 885 P.2d 887]. This case is materially different from Crittenden, however, in that here, unlike that case, the juror in question did not display any other characteristics, such as "indecisiveness" or an inability "to follow the law," that independently defeats a prima facie case. (Ibid.)
Ms. Rutherford's characteristics and her answers to the questionnaire and on voir dire provide no basis upon which to differentiate her from the Caucasian jurors accepted by the district attorney or from the community as a whole. (People v. Turner (1986) 42 Cal.3d 711, 719 [230 Cal. Rptr. 656, 726 P.2d 102].) Defense counsel called the questionnaires of all prospective *674 jurors and the responses of those potential jurors who then had been orally interviewed to the attention of the trial court in connection with their Wheeler motion. Aside from her race Ms. Rutherford appears materially indistinguishable from and at least as fit to serve as most other jurors approved by the prosecution, and the record before us provides no reasonable race-neutral explanation for her removal. If the trial court was aware of any such explanation, it did not describe it for the record, referring instead to unspecified "circumstances." (See text, post, at p. 678.)

II.
The majority relies on People v. Bernard (1994) 27 Cal. App.4th 458 [32 Cal. Rptr.2d 486], for the proposition that "[a] defendant may not simply rely upon exclusion of the group-associated prospective jurors in establishing `a strong likelihood' of removal because of group bias[,]" but "should underscore `other relevant circumstances, such as prospective jurors' characteristics, the nature of the prosecutor's voir dire, or the prospective jurors' answers to questions.'" (Id., at p. 466.) Any failure of defense counsel to "underscore" the relevant considerations indicative of bias more vociferously than he did unfairly assumes the necessity for further emphasis. The prospective jurors' characteristics and answers to questions, when compared to those of Ms. Rutherford, together with the nature of the voir dire that had by then occurred (which will be described presently), were already so apparently suspicious as to render the statements of counsel sufficient to satisfy the requirement of Bernard. A judicial determination that the world is flat is not excused by the failure of counsel to object loudly enough. Furthermore, as the Supreme Court has pointed out, the inadequacy of a defendant's attempt to show a prima facie case does not permit an appellate court to limit review in such cases "solely to counsel's presentation at the time of the motion. This is because other circumstances might support the finding of a prima facie case.... Nor should the trial court blind itself to everything except defense counsel's presentation. Indeed, we have emphasized that such rulings require trial judges to consider `all the circumstances of the case' (Wheeler, supra, 22 Cal.3d at p. 280) and call upon judges' `"powers of observation, their understanding of trial techniques, and their broad judicial experience."' (People v. Bittaker (1989) 48 Cal.3d 1046, 1092 ... see also Batson, supra, 476 U.S. at p. 97....)" (People v. Howard, supra, 1 Cal.4th at p. 1155, italics added.)
There are such other circumstances in this case. The manner and timing of the prosecutor's exercise of its peremptory challenge of Ms. Rutherford provides yet another reason the trial judge should have invited the district attorney to respond to the Wheeler motion. Our Supreme Court has observed *675 that a prima facie showing can be made on the basis of the failure to question or indifferent questioning of a prospective juror by the challenging party, because it indicates a "previous plan" to remove such a juror. (People v. Motton (1985) 39 Cal.3d 596, 607, fn. 3 [217 Cal. Rptr. 416, 704 P.2d 176]; People v. Wheeler, supra, 22 Cal.3d at p. 281.) The voir dire of Ms. Rutherford, which was conducted solely by the court and is reported in less than three pages of transcript, is notable only for the innocuousness of the colloquy in which she was engaged by the court. None of the attorneys sought leave to ask Ms. Rutherford any additional questions and no challenge was exercised at that time. The court then proceeded to voir dire 11 other prospective jurors (Wackerly, Brown, Kulunk, Joe, Walker, Zabbo, Stutzman, Gray, Geltz, Yacovetti and Janes). Almost all were subjected to substantially more probing questions than had been put to Ms. Rutherford. The district attorney sought and was granted permission to directly question a few of these prospective jurors, such as, for example, Ms. Zabbo. After the voir dire of these 11 other prospective jurors was completed the district attorney suddenly and somewhat unexpectedly excluded Ms. Rutherford, who had not been heard from in quite a while. While there is certainly nothing improper about the prosecutor's failure to seek leave to supplement the short and innocuous questioning conducted by the court, and the delay in exercising his challenge, these factors suggest counsel may have wanted to exclude Ms. Rutherford from the outset and to obscure his reason. Such circumstances add to the likelihood of a race-based reason for the exclusion and heighten the need for judicial inquiry.
The fact that Ms. Rutherford was the only Black person then on the venire at the time of the challenge is hardly irrelevant, as the majority suggests. The statement in Bernard that a defendant "may not simply rely upon exclusion of the group-associated prospective jurors" (27 Cal. App.4th at p. 466, italics added) does not mean this factor is irrelevant to whether a strong likelihood has been shown that prospective jurors are being challenged because of their group association. The Supreme Court declared in Wheeler that a party "may show that his opponent has struck most or all of the members of the identified group from the venire, or has used a disproportionate number of his peremptories against the group." (22 Cal.3d at p. 280.) Only five prospective jurors in this case were African-American, two of whom were peremptorily challenged. At the time Ms. Rutherford was removed, only one other African-American was available as a prospective juror. A third of the prosecution's challenges were directed to this small group of prospective jurors. While I agree this information is in and of itself insufficient to establish a prima facie case of group bias, it may be used to and certainly does buttress that case. (See Turner v. Marshall, supra, 63 F.3d 807, 813 ["... prosecutor's exclusion of five out of nine available African-American *676 venirepersons removed a sufficient percentage of African-Americans to establish a pattern of discrimination."].)
As trial counsel emphasized, a prima facie case of group bias was clearly established in this case on the basis of the removal of a prospective juror who was at the time the only Black on the venire.[4] At the very least, the evidence raises "an inference that the peremptory challenge was motivated by race." (See Batson v. Kentucky, supra, 476 U.S. 79, 96 [106 S.Ct. 1712, 1722-1723].)

III.
Expressing displeasure that they are "forced to comb the record for evidence of racial bias and/or hypothecate why jurors were excluded," my colleagues blame the problem on appellants, for failing to more specifically articulate the bases of their Wheeler challenge. (Maj. opn., ante, at p. 667.) As will be seen, there is far more reason to blame the trial court, for it not only failed to explain its ruling but denied the district attorney an opportunity to oppose appellants' Wheeler motion by at least explaining why appellants had failed to make out a prima facie case. As the Supreme Court has stated, "[w]hen a Wheeler motion is made, the party opposing the motion should be given an opportunity to respond to the motion, i.e., to argue that no prima facie case has been made. At this point no explanation for the exercise of the peremptory challenges need be given." (People v. Fuentes, supra, 54 Cal.3d at p. 716, fn. 5; People v. Bittaker (1989) 48 Cal.3d 1046, 1091-1092 [259 Cal. Rptr. 630, 774 P.2d 659].) Here, the court rejected appellants' Wheeler motion without any comment whatsoever from the district attorney, who stood idly by. Had the prosecutor been required to respond, as he should have, he might have provided the persuasive race-neutral explanation for the removal of Ms. Rutherford that is so conspicuously absent in this case; at the very least the record would not require the speculation in which my colleagues so freely engage. A response from the district attorney would also have focussed the issue, for the benefit of the trial court and this reviewing court.
Under Batson, a defendant is allowed to show that a prosecutor's race-neutral explanation is pretextual. (See, e.g., Williams v. Groose (8th Cir. *677 1996) 77 F.3d 259, 261.) This right to rebut is of course meaningless when the prosecutor is relieved of the need even to respond to the motion, let alone provide an explanation for the juror challenge.
The record suggests the district attorney may have offered no explanation because the court prevented all counsel from significantly participating in the voir dire. At one point in the process, when one of the defense lawyers sought leave to put a question to a prospective juror, the district attorney reminded the trial judge that you "don't allow the lawyers to talk. And I think it's incorrect now to change gears and say now you'll allow them to talk." The judge agreed, stating: "I don't allow attorneys to ask questions but upon a showing of good cause." The restrictions on attorney involvement in voir dire imposed by the court  which are not in and of themselves improper (see Code Civ. Proc., § 223)  make it all the more necessary for the court to invite some response to a Wheeler motion. The Wheeler court indicated that the failure of the challenging party "to engage the jurors in more than desultory voir dire would show his previous plan to remove those jurors." (People v. Motton, supra, 39 Cal.3d 596, 607, fn. 3; People v. Wheeler, supra, 22 Cal.3d at p. 281.) Where, as here, the reason for the "desultory questioning," or no questions at all, is a restriction imposed by the court, the court has a much greater responsibility than it would otherwise have to invite counsel to respond to a Wheeler motion. Such judicial restrictions make it easier for an attorney to obscure the racial motive for a peremptory challenge and correspondingly harder for the objecting attorney to expose that fact.[5] The court below should have been alert to the possibility the limitations it placed on additional questioning might compound the difficulty of ascertaining the motive for the challenge (not just for appellants but for this appellate court) so as to make it all the more appropriate to call upon the district attorney to respond in some fashion.
At oral argument before us the Attorney General candidly conceded that the trial court should have asked the district attorney to explain the basis of *678 his peremptory challenges of Ms. Rutherford and Joann James (though he maintained the court was not required to do so); the court should, a fortiori, have at a minimum required the district attorney to explain why a prima facie case of bias had not been shown.
It is a major mistake for an appellate court to impose on itself the responsibility to search a lengthy record to find some justification for the facially questionable determination of a trial judge who could so much more easily have done so but was indifferent to the responsibility.

IV.
In ruling that a prima facie case had not been established the trial court apparently applied an erroneous test. The court explained its finding as follows: "this was the third peremptory challenge by the People. We are relatively early on, obviously, in the peremptory challenges by both sides. And, again, under all these circumstances as detailed by both defense counsel and the Court, the Court does not find that the exercise of one peremptory challenge against one black juror under these circumstances makes a prima facie showing that it's based solely on group bias. And the motion will be denied." Counsel for appellant Buckley thereupon pointed out to the court that under Batson v. Kentucky, supra, 476 U.S. 79 "a prima facie showing can be made on the basis of a sole peremptory challenge." The court demurred, and simply reiterated that due to unidentified circumstances then obtaining, appellants had failed to establish "that exercise of one peremptory challenge against one black juror constitutes [a prima facie] showing [of group bias]."
The implication that a single peremptory challenge cannot constitute a prima facie showing is clearly wrong, as a pattern of discrimination involving more than one prospective juror is not required by Wheeler or Batson. (Indeed, Batson reversed Swain v. Alabama (1965) 380 U.S. 202 [85 S.Ct. 824, 13 L.Ed.2d 759], which did require a pattern of discrimination.) Our Supreme Court has explained that although it and other courts "sometimes use[] the term `systematic exclusion' to describe a discriminatory use of peremptory challenges. The term is not apposite in the Wheeler context, for a single discriminatory exclusion may violate a defendant's right to a representative jury." (People v. Fuentes, supra, 54 Cal.3d 707, 716, fn. 4, italics added; accord, Turner v. Marshall, supra, 63 F.3d 807, 814; United States v. David (11th Cir.1986) 803 F.2d 1567, 1571; United States v. Battle (8th Cir.1987) 836 F.2d 1084, 1086.) The fact that the removal of Ms. Rutherford occurred "early on" in the proceedings, through the use of the People's third peremptory challenge, is of no legal moment. In United States v. Chinchilla, *679 supra, 874 F.2d 695, the peremptory challenge found by the Court of Appeals to have been racially motivated was the government's first.
The record before us provides no basis upon which we may conclude that the trial court focussed at all upon what should have been the central question: the reason the prosecutor used a peremptory challenge to remove Ms. Rutherford. "[T]he trial court must determine not only that a valid reason existed but also that the reason actually prompted the prosecutor's exercise of the particular peremptory challenge." (People v. Fuentes, supra, 54 Cal.3d at p. 720; People v. Hall (1983) 35 Cal.3d 161, 168 [197 Cal. Rptr. 71, 672 P.2d 854]; People v. Tapia (1994) 25 Cal. App.4th 984, 1013 [30 Cal. Rptr.2d 851].)
As has been noted, "[w]hile the Supreme Court's most recent rulings indicate a greater willingness to affirm a trial court's Wheeler determinations despite an `oversight' [citation] or mistaken belief concerning the applicable law [citation], there has been no published California case in which a reviewing court has affirmed a lower court's Wheeler ruling where, as here, the trial court resolved the issue based upon the wrong legal standard, without even considering the criteria upon which the decision is properly based." (People v. Tapia, supra, 25 Cal. App.4th at p. 1015.)

V.
To the extent the majority's determination that "defense counsel failed to establish from all the circumstances of the case a strong likelihood that such persons were being challenged because of their group association" (maj. opn., ante, at p. 665) rests on People v. Turner (1994) 8 Cal.4th 137 [32 Cal. Rptr.2d 762, 878 P.2d 521], People v. Howard, supra, 1 Cal.4th 1132; People v. Rousseau (1982) 129 Cal. App.3d 526 [179 Cal. Rptr. 892] and People v. Bernard, supra, 27 Cal. App.4th 458, such reliance is misplaced. These cases are all significantly different from this one in one or more significant particulars.
Instead of justifying the finding in this case, Turner actually demonstrates its inadequacy. Although the trial court in Turner found no prima facie case had been made, it first required the district attorney to explain his challenge. The trial court stated, "`I want the record to be clear that I'm making that request not as a result of any prima facie finding of exclusion of the prospective jurors on the basis of color.... I just want the record to be as clear as it can be. So that's the reason why I'm asking for that response.'" (8 Cal.4th at p. 165, italics added.) "The prosecutor then complied with the court's request and delineated his reasons." (Id., at p. 166.) The Supreme *680 Court affirmed denial of the Wheeler motion in Turner in part because the trial court complied with the procedure set forth in People v. Fuentes, supra, 54 Cal.3d at pages 716-717, footnote 5, by giving the prosecutor an opportunity to explain why no prima facie case had been made. (People v. Turner, supra, 8 Cal.4th at p. 167.) The Supreme Court's affirmance was also predicated on the fact that "the only bases for establishing a prima facie case cited by defense counsel were that all of the challenged prospective jurors were Black and either had indicated that they could be fair and impartial or in fact favored the prosecution." (Ibid.) As we have seen, the prima facie case here was based on a considerably stronger suggestion of purposeful discrimination.
In People v. Howard, supra, 1 Cal.4th 1132 the trial court denied the defendant's Wheeler motion without affording the district attorney an opportunity to respond  though the district attorney thereafter did submit a declaration explaining his challenges. (Id., at p. 1153, fn. 3.) The Supreme Court affirmed because of the defendant's "meager showing," which consisted of no more than the statement "`that "there were only two blacks on the whole panel, and they were both challenged by the district attorney."'" (Id., at p. 1154.) The defendant did not, as in this case, call the court's attention to "the other relevant circumstances, such as the prospective jurors' individual characteristics, the nature of the prosecutor's voir dire, or the prospective jurors' answers to questions." (Ibid.) Furthermore, undertaking an independent examination of the record, the Supreme Court identified race-neutral reasons for removal of the two challenged jurors. The court believed the professional training of one of the challenged jurors, which was in an area that might be tested at trial, was a legitimate reason for the prosecutor's challenge. The other juror expressed "uncertainty about the death penalty," which the court found also provided reasonable grounds for a prosecutorial challenge. (Id., at p. 1157.) Neither Ms. Rutherford's training, nor her views about the law, nor any other characteristic provided such reasonable grounds because such characteristics were similar to those of other jurors permitted to serve.
People v. Rousseau, supra, 129 Cal. App.3d 526, is distinguishable from this case for the same reason as Howard, as the Wheeler motion in Rousseau was also based solely on the statement "that `there were only two blacks on the whole panel, and they were both challenged by the district attorney'" (Id., at p. 536), and the record apparently provided no substantive reason to believe the peremptory challenge was made solely on the basis of group bias.
In People v. Bernard, supra, 27 Cal. App.4th 458 the trial court denied Wheeler motions for failure to establish a prima facie case of group bias in *681 connection with the peremptory challenge of two prospective jurors. As to the first, the trial court explained that the juror's "facial responses and his reaction to the responses of other individuals" with respect to racial issues pertinent to the case was "cavalier." The court stated that "`It would in my mind be a disservice to this defendant at this point in time and certainly a disservice to the People to have someone on the panel who in my mind has exhibited the attitude of [this prospective juror]." (Id., at p. 467.) As to the second challenged juror, defense counsel observed that "`she has had prior jury experience, prior jury duty on a rape case. She works in juvenile hall as part of her duties. And has several friends in the probation department. She has had several criminal justice classes as a requirement. She is [also] unsure of the charges....'" (Id., at p. 468.) No similar race-neutral reasons for the challenge of Ms. Rutherford were offered by the trial court in this case, and none appear. As indicated, the district attorney in the present case accepted several jurors with at least as much involvement in judicial proceedings and law enforcement than Ms. Rutherford.
With the exception of Howard, which turned on the absence of any real showing of bias, the majority has cited no case, and I am aware of none, affirming a trial court finding that a prima facie case had not been shown in which the party opposing the motion made no effort or was given no opportunity to explain why a prima facie case had not been shown and the trial court identified no race-neutral justification for the challenge.

VI.
The trial court's peremptory determination that appellants failed to make a prima facie showing of group bias is troubling not simply because it is unjustified and wrong but because it appears so gratuitous.
The procedure designed in Wheeler to prevent racial discrimination in jury selection, and preserve public confidence in our courts, is not onerous. Ordinarily it takes but a few moments for a party who uses a peremptory challenge to explain why an objecting adversary has failed to establish a prima facie case or, if the court finds a prima facie case has been established, to provide a racially neutral explanation for the peremptory challenge if this can be done. Trial courts should not lightly relieve counsel of these important responsibilities, either by too readily accepting vague explanations (see, Colbert, Challenging the Challenge: Thirteenth Amendment as a Prohibition Against the Racial Use of Peremptory Challenges (1990) 76 Cornell L.Rev. 1 at pp. 97-98; Bell, Race, Racism and American Law (3d ed. 1992) § 5.16.4, p. *682 383)[6] or, as appears to have occurred here by elevating the "strong likelihood" standard to a level that can rarely be met by trial counsel, who are ordinarily in the difficult position of having to prove a negative, and must do so without the opportunity for preparation in advance under the considerable pressures imposed by trial proceedings.
If prospective jurors' characteristics, the nature of the prosecutor's voir dire and the prospective jurors' answers to questions can be cast aside, and suppositions of the sort my colleagues indulge can instead support an unexplained trial court finding of no prima facie case, the principle for which Batson and Wheeler stand "`would be but a vain and illusory requirement.'" (Batson v. Kentucky, supra, 476 U.S. at p. 98 [106 S.Ct. at p. 1724], quoting Norris v. Alabama (1935) 294 U.S. 587, 598 [55 S.Ct. 579, 583-584, 79 L.Ed. 1074].) Wheeler, like Batson, "makes race neutrality in jury selection a visible, and inevitable, measure of the judicial system's own commitment to the commands of the Constitution." (Powers v. Ohio, supra, 499 U.S. at p. 416 [111 S.Ct. at p. 1373], italics added.) Our responsibility, therefore, is to enforce the policy resolutely, not to bend over backward to persuade others or ourselves that the highly questionable removal of a prospective juror who is African-American is not what it appears to be: a mask for race prejudice. It is anomalous for California courts to obstruct the enforcement of Wheeler while federal courts are expanding the scope of Batson. (See J.E.B. v. Alabama ex rel. T.B. (1994) 511 U.S. 127 [114 S.Ct. 1419, 120 L.Ed.2d 33]; Georgia v. McCullom (1992) 505 U.S. 42 [112 S.Ct. 2348, 120 L.Ed.2d 33]; Edmonson v. Leesville Concrete Co. (1991) 500 U.S. 614 [111 S.Ct. 2077, 114 L.Ed.2d 660]: Powers v. Ohio, supra, 499 U.S. 400.)
I want to reemphasize, finally, that this dissent does not claim the prosecuting attorney actually excluded Ms. Rutherford from the jury on the basis of her race. While the record creates the strong likelihood this was the case, the possibility the challenge was properly motivated by one or more racially neutral considerations cannot be excluded. Thus the victims of judicial abdication of the responsibility to ascertain the motive may not be limited to *683 appellant, Ms. Rutherford, the community at large and the judicial system, but may include as well the prosecuting attorney, as many will assume he was motivated by racial bias even if he was not. Unfortunately, the truth will never be satisfactorily ascertained.
For the foregoing reasons, I would reverse the judgment.
Appellants' petition for review by the Supreme Court was denied June 18, 1997. Mosk, J., was of the opinion that the petition should be granted.
NOTES
[] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II, III B, III C, III D, III E, III F, III G, III H, III I, III J, III K, and III L.
[1] People v. Wheeler (1978) 22 Cal.3d 258 [148 Cal. Rptr. 890, 583 P.2d 748] (Wheeler); Batson v. Kentucky (1986) 476 U.S. 79 [106 S.Ct. 1712, 90 L.Ed.2d 69] (Batson).
[*] See footnote, ante, page 658.
[14] There is no record of the police officers' race.
[15] There were apparently five African-American prospective jurors in the jury pool. One was excused because she no longer lived in Contra Costa County; one was excused by the trial court for cause; two were challenged by the People; and one sat on the jury.
[16] The first Wheeler motion after Rutherford was challenged went as follows:

"Mr. Cook: Yes. And the motion is that the Court declare a mistrial and strike this panel on the ground that my client's right to a fair and impartial jury has been compromised by the exercise of the People's last peremptory challenge. And that challenge was of juror no. 9, Vera Rutherford. [¶] On her question their [sic] she described her race, or ethnic background, as black. My client, Mr. Buckley, is an African-American. He has a right not to have ... jurors excluded solely on the basis of race. I cannot glean anything from the questionnaire that Ms. Rutherford filled out, nor from the answers she gave to the other questions that were asked by the Court, which would indicate some particular factor or reason why she would not be a suitable juror. [¶] And the record should also reflect that Ms. Rutherford is  or was presently the only African-American seated in the jury box. There was another African-American man who was dismissed for cause earlier, but now  now the jury is devoid of any one of, who appears to be anyway, of African-American descent. [¶] I think the law in this area is outlined fairly clearly in the United States Supreme Court opinion of Batson v. Kentucky."
".... .... .... .... .... .... ....
"The Court: Ms. Fullerton, are you joining in this motion?
"Ms. Fullerton: I am joining in that motion and just a few comments for the record. [¶] Mr. Wade is also African-American. I have reviewed the jury questionnaires. In the 64 that were called there were only four that indicated they were African-American. One was excused for cause and one was excused because she no longer lived in Contra Costa County, which left in the entire panel only two African-Americans, one of which was just excluded. [¶] And I would join in Mr. Cook's description of her questionnaire and question by the Court as indicating that there does not appear to be any reason, other than her race, for which she would not be a qualified juror on this case.
"The Court: All right. Just add to the record here and to  clarify or reiterate, it does indicate, or appear in the questionnaires at least, there were a total of four jurors who at least indicated they were African-American in the questionnaires.... [¶] The Court has considered whether or not this exercise of one peremptory challenge against a black juror by the People constitutes a prima facie showing that the exercise of the peremptory challenge was solely on the ground of group bias, and under all of the circumstances in this case, the Court cannot find that. [¶] The Court will indicate that this was the third peremptory challenge by the People. We are relatively early on, obviously, in the peremptory challenges by both sides. And, again, under all these circumstances as detailed by both defense counsel and the Court, the Court does not find that the exercise of one peremptory challenge against one black juror under these circumstances makes a prima facie showing that it's based solely on group bias. And the motion will be denied.
"Mr. Cook: Judge 
"The Court: Yes.
"Mr. Cook: Just further, can I, since you have stated the basis for your ruling, could I point out the opinions of Batson v. Kentucky wherein Justice Powell specifically stated that it would be inconsistent with the promise of equal protection to all to require that the challenging party or the party raising the motion, which I am now, show more than one peremptory challenge or more than one exclusion. That  that's one of the focal points of the Batson opinion, is that a prima facie showing can be made on the basis of a sole peremptory challenge.
"The Court: I'm not disagreeing. It can be. I'm saying under all the circumstances in this case, this Court finds that you have not met your burden of showing that, making a prima facie case, that in this instance under these circumstances that exercise of one peremptory challenge against one black juror constitutes that showing."
The second Wheeler motion was handled as follows:
"Mr. Cook: I'm asking you to, on behalf of Mr. Buckley, to strike this jury panel at this time.... [¶] There is nothing in Ms. James written questionnaire that would indicate that she could not be fair in the case. There were [sic] nothing  she did not answer that she suspected that she might have a problem being fair in the case. She did give answers to a couple of things; that she had seen Mr. Wade before, that she thought that in some cases search warrants could be abused. Those raise questions, but the Court followed up in each case with a series of questions, just like the Court has done in every case where there  an apparent issue has arisen. And there were nothing in her answers that were  that would indicate to a reasonable person that this person could not be fair and impartial...."
"The Court: Now, the law requires that you make a prima facie showing that these challenges were based solely on discrimination at this point in time. Certainly I have to make a part of the record, it's part of my duty how many blacks were in the venire as a total, and that's what I attempted to do and did for the record. [¶] As far as whether you met that burden at this time, it is in fact true that another peremptory challenge was entered by the People of another Black juror. I would indicate for the record that there are things in the questionnaire, as well as in her answers in which do cause concern, and certainly good cause concern for any reasonable attorney  and the prosecution's viewpoint, she has a brother which was prosecuted for burglary. She indicated in oral voir dire that she had feelings about search warrants and whether or not they were necessary or abused in some circumstances. She indicated as well she has a brother who used drugs, and she's indicated in answers dealing with racial issues that she does have what I would, at least from the answers, here characterize as strong feelings. [¶] Yes, it is correct that in asking her follow-up questions she had not responded in any way that would have caused me to grant a challenge for cause. And I certainly don't disbelieve her answers to those follow-up questions any more than I would disbelieve the answers to the juror that you wanted me to believe was perjuring herself so that she could be challenged for cause. At this time I'm not going to find that prima facie case has been made out and, again, the motion will be denied."
[17] The "strong likelihood" phrase has been repeated often by our Supreme Court. In addition to Howard and Turner, see also People v. Davenport (1995) 11 Cal.4th 1171, 1199-1200 [47 Cal. Rptr.2d 800, 906 P.2d 1068]. Although the phrase conveys the clear message that the test is not an easy one (a message we take to heart in the present case), we nonetheless share with our dissenting colleague some concern that the phrase has not exactly been well defined by our Supreme Court, either in the cited cases or elsewhere.
[18] Contrary to the suggestion of our dissenting colleague (dis. opn., post, at pp. 678-679), Judge Sepulveda clearly understood that, at least theoretically, one challenge could be enough to establish racial bias. Her ruling was not to the contrary, but was only to the effect that here the defense had not met its burden of showing that the Rutherford strike demonstrated a prima facie case of such. The cases make very clear that "considerable deference" must be paid to the trial court's determination. (See Howard, supra, 1 Cal.4th at p. 1155; Sanders, supra, 51 Cal.3d at p. 500.) In explaining why this is so, the Sanders court noted that a Wheeler motion "`"requires trial judges to make difficult and often close judgments. They are in a good position to make such determinations, however, on the basis of their knowledge of local conditions and of local prosecutors." [Citation.] They are also well situated to bring to bear on this question their powers of observation, their understanding of trial techniques, and their broad judicial experience. We are confident of their ability to distinguish a true case of group discrimination by peremptory challenges from a spurious claim....' [Citations.] Applying this standard of giving considerable deference to the determination of the trial court, `we see no good reason to second-guess [the trial court's] factual determination' [citation] that the prosecutor was not motivated by bias...." (Sanders, supra, 51 Cal.3d at p. 501.)
[19] There is no record of the ethnic or racial background of the other impaneled jurors.
[20] It is worth emphasizing that the Rutherford challenge happened quite early in the trial, well before either James was challenged or much else of what Justice Kline speaks of in part I of his dissent occurred. Bearing in mind the slender nature of the defense allegations, we believe it is manifestly incorrect to argue, as the dissent does, that, at that early stage, the trial court was required to find a prima facie case.
[21] Our dissenting colleague's argument (dis. opn., post, at pp. 671-674) that Rutherford could not reasonably be differentiated from other jurors flies in the face of explicit Supreme Court directive. In Howard the court said that in such a situation  i.e., where the trial court has ruled that a prima facie case has not been established and thus the prosecutor has given no reasons for the challenge  we review the record for "`grounds upon which the prosecutor might reasonably have challenged' the jurors in question." (Howard, supra, 1 Cal.4th at p. 1155.) And in Turner that court made it clear that exactly the type of comparative analysis Justice Kline undertakes in this section of his dissent is distinctly unhelpful. (Turner, supra, 8 Cal.4th at pp. 169-170; see also People v. Arias (1996) 13 Cal.4th 92, 136, fn. 16 [51 Cal. Rptr.2d 770, 913 P.2d 980].) Even if permissible, the dissent's analysis will not withstand scrutiny. Thus, Justice Kline suggests that there may have been something sinister about the prosecutor waiting through the voir dire of 11 other jurors before striking Rutherford. (Dis. opn., post, at p. 675.) He ignores the fact that the prosecution did this at other times, too.
[22] Appellants argue that these reasons are insufficient because the prosecutor did not excuse other non-African-American jurors whose backgrounds were similar. However, the Supreme Court has rejected placing an undue emphasis on comparisons of the jurors' responses and has noted that "`the same factors used in evaluating a juror may be given different weight depending on the number of peremptory challenges the lawyer has at the time of the exercise of the particular challenge.'" (Turner, supra, 8 Cal.4th at p. 169, citing People v. Johnson (1989) 47 Cal.3d 1194, 1220 [255 Cal. Rptr. 569, 767 P.2d 1047].)
[23] Justice Kline suggests (dis. opn., post, at p. 675) that (a) the trial court's questioning of Rutherford was "innocuous" and (b) the fact that the prosecution did not propound further questions of her suggests actual bias on its part. He is, we respectfully submit, wrong on both counts. Some jurors were, in fact, questioned more extensively by the court, others less. In any event, we do not understand how the prosecution's motivation can be deduced from what the trial court did or didn't do by way of voir dire. Finally, no counsel was permitted to ask "follow up" questions without "good cause."
[24] Justice Kline is incorrect in suggesting that, aside from Howard, there is no appellate case rejecting a Wheeler challenge where the party opposing the motion made no effort, or was given no opportunity, to explain why a prima facie case had not been made or where the trial court identified no race-neutral justification for the challenge. Bernard is, with respect to the second challenge in that case, another.
[25] The Bernard jury ultimately ended up with two African-Americans on its panel; in this case, as already noted, the jury as ultimately impaneled contained one African-American juror.
[26] On appeal, appellants cite confusing statistics regarding the racial background of the jury panel and argue that because statistically a disproportionate number of African-American prospective jurors were challenged that this alone made out a prima facie case of discrimination. Appellants are wrong. It is well established that a prima facie case cannot be shown solely on the basis that the prosecutor used preemptory challenges against a disproportionate amount of members of a minority group. (People v. Howard, supra, 1 Cal.4th at p. 1154; People v. Wimberly (1992) 5 Cal. App.4th 773, 782-783 [7 Cal. Rptr.2d 152].) Rather, as stated above, the trial court makes this determination based on "`all of the circumstances of the case.'" (People v. Howard, supra, 1 Cal.4th at p. 1154.)
[1] And, as pointed out in People v. Fuller (1982) 136 Cal. App.3d 403, 422-423 [186 Cal. Rptr. 283], the Wheeler court's intention in this respect is not at all clear.
[2] The only juror questionnaires that are part of the record before us are those individuals who actually served as jurors and alternates. The record contains a declaration of John McMahon, Deputy Clerk of the Contra Costa County Superior Court, that the clerk of the department in which trial was held does not save the questionnaires of all prospective jurors, except in capital cases. It is therefore possible, perhaps even likely, that the district attorney passed more Caucasian jurors than we know of with characteristics indistinguishable from those of Ms. Rutherford.
[3] The defendants and virtually all the defense witnesses were Black. The record suggests that all or nearly all the prosecution witnesses were White. Moreover, the central question for the jury was the credibility of testimony relating to what it would be reasonable for Black residents of a predominantly Black neighborhood to believe in the given circumstances.
[4] Daniel Cook, trial counsel for appellant Buckley, stated as follows: "... no one is ever going to say they exercised a peremptory challenge solely based on race. It's never going to happen. It's certainly not going to happen with someone as qualified and competent as Mr. O'Malley. Anybody of a minimal intelligence will always be able to think of some excuse as to why they didn't want any particular juror to sit on a case. But the court is the keeper of justice. And if you're going to do your duty to this community, and your duty to the people who are faced with spending decades of their lives in the penitentiary here, if you're going to do your duty, you've got to at least declare that the exclusion of the only black person on the jury at least establishes a prima facie showing of discriminatory exclusion." (Italics added.)
[5] The restriction on the involvement of counsel in voir dire in this case was presumably based on Code of Civil Procedure section 223, added by an initiative measure (Prop. 115) approved by the voters on June 5, 1990. (See People v. Boulerice (1992) 5 Cal. App.4th 463, 469-480 [7 Cal. Rptr.2d 279].) The powers of the trial court under section 223 cannot even inadvertently be allowed to obscure whether a party making a Wheeler motion has made out a prima facie case of discrimination. While the exercise of discretion by trial judges under the new system of court-conducted voir dire is accorded considerable deference by the courts of appeal (People v. Chapman (1993) 15 Cal. App.4th 136, 141 [18 Cal. Rptr.2d 738]; People v. Taylor (1992) 5 Cal. App.4th 1299, 1313 [7 Cal. Rptr.2d 676]), such discretion is abused "if the questioning is not reasonably sufficient to test the jury for bias or partiality." (People v. Chapman, supra, 15 Cal. App.4th at p. 141, citing People v. Chaney (1991) 234 Cal. App.3d 853, 861 [286 Cal. Rptr. 79]; United States v. Jones (9th Cir.1983) 722 F.2d 528, 529; United States v. Baldwin (9th Cir.1979) 607 F.2d 1295, 1297; accord, People v. Martinez (1991) 228 Cal. App.3d 1456, 1460 [279 Cal. Rptr. 858]; People v. Wells (1983) 149 Cal. App.3d 721, 725 [197 Cal. Rptr. 163].)
[6] The author of the first cited article laments that "[t]rial courts have rejected defendants' Batson challenges and upheld prosecutors' peremptory challenges because the potential black juror was young and single, was `of age and married but was too pregnant,' or had a last name similar to the defendant's last name. Other courts have accepted a wide range of explanations for the peremptory dismissal of black jurors: they were either unemployed or underemployed; they worked as social workers, federal employees, scientists, or associates of radio or television stations that aired programs considered to be anti-law enforcement. Courts have also upheld prosecutors' disqualification of black jurors living in the same neighborhood or similar `high crime' district as the accused or for not having graduated from high school." (Colbert, Challenging the Challenge: Thirteenth Amendment as a Prohibition Against the Racial Use of Peremptory Challenges, supra, 76 Cornell L.Rev. at pp. 97-98, fns. omitted.)